In the Matter of WESTCHESTER ROCKLAND NEWSPAPERS, INC., Appellant, v ALOYSIUS MOSCZYDLOWSKI, as Clerk of the City of Yonkers, et al., Respondents.

Second Department, July 11, 1977

*McCarthy, Fingar, Donovan & Glatthaar (Charles M. Feuer* and *Arthur D. Brennan* of counsel), for appellant.

*Eugene J. Fox, Corporation Counsel,* for respondents.

COHALAN, J. On April 7, 1976 20-year-old Steven Karagianis died while incarcerated in the Yonkers City Jail. The incident was widely reported in the press at the time. Immediately after the occurrence, the Internal Affairs Division of the Police Department investigated the death and its surrounding circumstances and prepared a comprehensive report thereon. This original report was eventually sent to the Corporation Counsel of the City of Yonkers. Copies thereof were also sent to the Westchester County District Attorney, at the latter's request, and to the State Department of Correctional Services. A summary of the report, prepared by the Corporation Counsel, was given to the press. Soon after, the District Attorney determined that there had been no evidence of anything of a criminal nature in the unfortunate incident.

Within a month of Karagianis's death, petitioner, the owner of the *Herald Statesman* newspaper, requested both the Corporation Counsel and the City Manager to supply it with a copy of the original police report. By letter dated May 3, 1976, the Corporation Counsel denied petitioner's request on the ground that civil litigation was anticipated and that material involved in litigation was not reachable under the Freedom of Information Law. This CPLR article 78 proceeding was served upon the city with respect to Karagianis's death; and, thereafter, a wrongful death action was commenced, charging assault, false arrest and imprisonment, and negligence, resulting

in physical pain, mental anguish and Karagianis's death by hanging.

At Special Term respondents asserted that the original police report was exempt from disclosure under the Freedom of Information Law because (1) it was part of an investigatory file of the Police Department (see Public Officers Law, § 88, subd 7, par d) and (2) it constituted material prepared for litigation. As respects the latter claim, the Corporation Counsel averred, *inter alia,* that the report was material prepared for litigation and not discoverable by petitioner because "[a]s with all cases involving the City of Yonkers, the police report is sent to my office and is used in defense of the litigation."

Special Term held that the report was not now entitled to exemption from disclosure under paragraph d of subdivision 7 of section 88—"part of investigatory files compiled for law enforcement purposes"—inasmuch as the District Attorney had already determined that there was no basis for criminal action. In short, that aspect of the investigation was closed. However, Special Term did uphold respondents' claim that the report constituted material prepared for litigation. It agreed that the CPLR does not restrict disclosure of records made public under the Freedom of Information Law merely because of pending litigation, but, applying the tests of CPLR 3101 (subd [d]), the court held that disclosure may be denied unless it can be shown that withholding the report would result in injustice or undue hardship. It found that no such injustice had been demonstrated and that, since publication of the report by petitioner's newspaper would allow the Karagianis plaintiffs to obtain indirectly what they could not obtain directly, the damage to respondents might far outweigh the benefit to petitioner if disclosure were granted. We reverse.

Material which is exempt from disclosure pursuant to CPLR 3101 (subd [d]) because prepared solely for purposes of litigation is, in our view, similarly exempt from disclosure under the Freedom of Information Law (see Public Officers Law, § 88, subd 7, par a). The legislative intent, as embodied in the Freedom of Information Law (Public Officers Law, § 85) was to increase the understanding and participation of the public in government and to extend public accountability by giving the public unimpaired access to the records of government and its process of decision-making. Governmental material which is prepared solely for purposes of litigation is simply not the

type of governmental record to which the public has now been given access.

The governmental decisions and actions which become the subject of litigation may well be within the public realm; but material prepared solely with reference to the government's posture in that legal proceeding is not. In the latter situation there are no longer any considerations of public participation or accountability to support a general "right to know". Stated another way, the purpose of the Freedom of Information Law is to lift the cloak of secrecy from those records of government which are part of the governmental process. When, however, the government assumes the role of a litigant, entirely different rules apply to both the government and its adversary. Records prepared by the government solely with respect to its actual or contemplated status as a litigant are not records of governance and the public can have no greater right of access thereto than the party with whom the government is engaged in such litigation. Furthermore, where the Legislature has intended that governmental records be disclosed without regard to the status of the governmental unit as a litigant, it has specifically so stated (see Public Officers Law, § 66-a [police accident reports]). Here there is no such specific declaration.

*Matter of Burke v Yudelson* (81 Misc 2d 870, affd 51 AD2d 673), which is cited as the leading case (it is also the only case) holding that the CPLR disclosure restrictions are not incorporated into the Freedom of Information Law, is totally inapposite. *Burke* dealt with the common-law privilege for official information, not the exemption for material prepared for litigation. Indeed, the material there sought was specifically found to have been prepared for purposes other than particular litigation (81 Misc 2d, at p 875).

Nevertheless, respondents can find no comfort in the exemption of material prepared for litigation from the ambit of the Freedom of Information Law for the subject police report does not qualify as material prepared solely for such purpose. Rather, it had multiple purposes which included, *inter alia,* enabling the District Attorney to determine whether any crime or offense had been committed by anyone and enabling the Police Department, itself, to determine whether any of its personnel were guilty of breach of duty and whether its procedures were adequate to prevent any recurrence. It may also be said that this investigation was conducted in the regular course of official police business. Since all of these

nonlitigation purposes do not, by themselves, constitute independent grounds for exemption, the report cannot be deemed exempt from disclosure pursuant to CPLR 3101 (subd [d]; see, e.g., *Kandel v Tocher,* 22 AD2d 513). Hence, guidance must be sought from other portions of the Freedom of Information Law to determine whether this report is subject to disclosure in whole or in part.

It must be recalled that records of law enforcement agencies have traditionally been exempted from public disclosure (see, e.g., *Matter of Dillon v Cahn,* 79 Misc 2d 300, 302; *Scott v County of Nassau,* 43 Misc 2d 648; see, also, *Matter of Cherkis v Impellitteri,* 307 NY 132). The Freedom of Information Law recognizes the unique factors at work in continuing to exempt from disclosure investigative files compiled for law enforcement purposes (Public Officers Law, § 88, subd 7, par d) and, for example, limiting mandatory disclosure of other items where disclosure would be inappropriate because of the law enforcement community's particular needs (see Public Officers Law, § 88, subd 1, par g). As to other items or records which are specifically cited as subject to disclosure, only police blotter and booking entries (Public Officers Law, § 88, subd 1, par f) are clearly referable to the law enforcement records category. The subject report is not such a record. Nor is it a police accident report within the meaning of section 66-a of the Public Officers Law. Rather, it is akin to an intra- or interagency memorandum within the contemplation of the Federal Freedom of Information Act (US Code, tit 5, § 552, subd [b], par [5]), upon which our law is generally patterned, or is, perhaps, a final agency opinion on the facts and circumstances surrounding the death of an individual while in police custody, within the contemplation of the State law (Public Officers Law, § 88, subd 1, par a). So viewed, the competing interests at bar are best satisfied by directing disclosure of only so much of the subject report as represents purely factual matter, with the names of police officers and jail personnel deleted (see *Environmental Protection Agency v Mink,* 410 US 73; *Moore-McCormack Lines v I. T. O. Corp. of Baltimore,* 508 F2d 945). Although our law does not specifically deal with intra- or interagency memoranda, its Senate sponsor, State Senator Ralph J. Marino, has stated that it is anticipated such memoranda will be treated in the same manner under State law as they are treated under Federal law (Marino, The New York Freedom of Information Law, 43 Fordham L Rev 83, 86-87).

We, therefore, have reversed the judgment and remand to Special Term with instructions that it examine the subject report *in camera* and direct disclosure of all severable portions consisting solely of factual matter. In this way, the public's right to know of governmental actions will be preserved without undue interference with the government's litigation needs.

MOLLEN, J. (concurring in part and dissenting in part). The facts underlying the preparation of the sought-after report have been presented in the majority opinion. I am in agreement with the majority that reversal of the judgment of Special Term is required. However, I disagree as to the limitations which it has imposed with regard to the requested disclosure.

The Freedom of Information Law (Public Officers Law, art 6) mandates the availability for public inspection of a wide range of records prepared and/or maintained by all public agencies. Certain exemptions are specified in the statute. The respondents initially contended at Special Term that the requested disclosure should be denied on the grounds that (1) the requested record, as part of investigatory files compiled for law enforcement purposes is therefore exempt from disclosure under paragraph d of subdivision 7 of section 88 of the Public Officers Law and (2) the requested record constitutes material prepared for litigation and is therefore exempt from public scrutiny pursuant to CPLR 3101 (subd [d], par 2).

Special Term found no merit in respondents' first contention in view of the fact that the District Attorney concededly had concluded his investigation subsequent to the making and filing of the report in question and prior to the instant request. Special Term, however, denied the relief sought by petitioner on the second above-stated ground, namely, that this report had been compiled in preparation for litigation, and therefore came within the proscription of CPLR 3101 (subd [d], par 2). Special Term conceded that the CPLR does not "ipso facto, restrict disclosure of records made public under the Freedom of Information Act merely because of pending litigation" (88 Misc 2d 348, 351). However, Special Term went on to hold that "disclosure may be denied unless it can be shown 'that withholding it will result in injustice or undue hardship.' (CPLR 3101 subd [d].)" Special Term concluded that "[s]uch injustice or hardship has not been demonstrated", and denied the motion.

The majority holds that material exempt from disclosure pursuant to CPLR 3101 is also exempt from disclosure under the Freedom of Information Law (see Public Officers Law, § 88, subd 7, par a). However, it bottoms its reversal on the ground that the exemption from disclosure under CPLR 3101 (subd [d]) applies only to material prepared *solely* for litigation. Therefore, since it finds that the report in issue herein was not prepared solely for litigation, it concludes that it does not come within the exemption from disclosure.

I agree that the report was not one prepared solely for litigation, and therefore does not come within the purview of CPLR 3101 (subd [d]) (see *Matter of Romanchuk v County of Westchester,* 42 AD2d 783, affd 34 NY2d 906). Thus, it is unnecessary, in the disposition of this proceeding, to determine whether or not the exemptions from disclosure specified in CPLR 3101 are to be deemed exemptions from the requirements of the Freedom of Information Law. Hence, I do not reach that issue.

However, I disagree with the majority in its imposition of restrictions and limitations upon the disclosure of this record. I find no sanction in the Freedom of Information Law for instructing Special Term to examine the subject report *in camera,* and for Special Term to sever and make available for disclosure only those portions which it deems to consist solely of factual matter.

The issue, as is true in resolving the question of interpretation of any statute, is one of determining the true legislative intent. The Court of Appeals, in construing another section of the Public Officers Law (former section 66), which pertains to similar subject matter, stated the principle thusly: "In construing statutory provisions, the spirit and purpose of the statute and the objectives sought to be accomplished by the legislature must be borne in mind. 'The legislative intent is the great and controlling principle' * * * *(People v. Ryan,* 274 N. Y. 149, 152; see, also, *Matter of United Press Assns. v. Valente, supra,* 308 N. Y. 71, 83-84; *Matter of River Brand Rice Mills v. Latrobe Brewing Co.,* 305 N. Y. 36, 43-44.)" The court continued on to state: "Turning to section 66 of the Public Officers Law, the provision before us, there is no doubt that it expresses a strong legislative policy to make available to public inspection and access all records or other papers kept 'in a public office,' at least where secrecy is not enjoined by statute or rule. Effectuation of the policy in favor of full

publicity accordingly demands the broadest possible interpretation of the scope and content of that section, so far as some overriding consideration of policy does not forbid" *(Matter of New York Post Corp. v Leibowitz,* 2 NY2d 677, 685-686).

There may be some ambiguity with regard to section 88 (subd 7, par a) of the Public Officers Law and the question of the applicability of the Freedom of Information Law to records such as those which come within the ambit of CPLR 3101. However, as indicated earlier herein, the entire court is in agreement that the record involved herein does come within the scope of the Freedom of Information Law. Thus, the sole question which remains is whether this court may impose the restrictions and limitations which the majority seeks to impose upon the petitioner's access to the requested report. The legislative intent is set forth in section 85 of the Public Officers Law, which reads as follows:

"§ 85. Legislative intent.

"The legislature hereby finds that a free society is maintained when government is responsive and responsible to the public, and when the public is aware of government actions. The more open a government is with its citizenry, the greater the understanding and participation of the public in government.

"As state and local government services increase and public problems become more sophisticated and complex and therefore harder to solve, and with the resultant increase in revenues and expenditures, it is incumbent on the state and its localities to extend public accountability wherever and whenever feasible.

"The people's right to know the process of government decision-making and the documents and statistics leading to determinations is basic to our society. Access to such information should not be thwarted by shrouding it with the cloak of secrecy or confidentiality.

"The legislature therefore declares that government is the public's business and that the public, individually and collectively and represented by a free news media, should have *unimpaired* access to the records of government." (Emphasis supplied.) Patently, there is no ambiguity as to the legislative intent with regard to those records which do come within the purview of the Freedom of Information Law.

This fact is further confirmed by a law review article

written by the sponsor of this law in the New York State Senate. Senator Ralph J. Marino, writing in the Fordham Law Review, under the heading "The New York Freedom of Information Law", stated in his very first paragraph: "On September 1, 1974, New York became one of the first states to effect a 'Freedom of Information Law.' Patterned after the Federal Freedom of Information Act, the Law marked the beginning of *complete* disclosure of governmental information on all levels of government in New York State." (43 Fordham L Rev 83, emphasis supplied.) Again (p 85), Senator Marino declared: "The adoption of the Freedom of Information Law should indicate to governmental administrators and to the courts that restrictions other than those specifically enumerated are not to be placed on the public's access to information."

Thus, the legislative intent is clear. Specifically, section 85, by its very terms, provides, as heretofore set forth, that a free news media "should have unimpaired access to the records of government."

The courts, in construing similar provisions, have consistently held that this right of access must be given the broadest interpretation. In *Matter of New York Post Corp. v Moses* (12 AD2d 243, 250-251, revd on other grounds 10 NY2d 199) the Appellate Division, First Department, declared: "Absent legislative prohibition, or the existence of a rule to the contrary, the legislative policy is to make available for inspection all records, papers and documents kept in a public office. Indeed, unless some overriding consideration of public policy forbids it, no other course under our practice and traditions is likely to afford the safeguards assured by the right of public inspection (cf. *Matter of New York Post Corp. v. Leibowitz,* 2 N Y 2d 677, 686). While we do not expressly hold that section 66 of the Public Officers Law authorizes the examination sought, it nevertheless 'expresses a strong legislative policy to make available to public inspection and access all records or other papers kept "in a public office," at least where secrecy is not enjoined by statute or rule. Effectuation of the policy in favor of full publicity accordingly demands the broadest possible interpretation of the scope and content of that section, so far as some overriding consideration of policy does not forbid' *(Matter of New York Post Corp. v. Leibowitz, supra,* p. 686)."

Similarly, this court, in construing similar disclosure provisions, has held that: "These statutes manifest in our opinion the general policy of our State 'to make available to public

inspection and access *all* records or other papers kept "in a public office," at least where secrecy is not enjoined by statute or rule' *(Matter of New York Post Corp. v. Leibowitz,* 2 N Y 2d 677, 686)" *(Matter of Werfel v Fitzgerald,* 23 AD2d 306, 310, emphasis supplied).

In *Matter of Cline v Board of Trustees of Schenectady County Community Coll.* (76 Misc 2d 536, affd 45 AD2d 823) the court, in the course of analyzing certain similar disclosure sections, stated the applicable principles aptly (76 Misc 2d, pp 540-541):

"The New York State Legislature has enacted certain statutes which define both right of inspection of public records and the manner in which the right is to be exercised (see Education Law, § 144; Public Officers Law, § 66; Judiciary Law, §§ 255, 255-b; General Municipal Law, § 51). All these provisions express a strong and forthright legislative policy to make available to public inspection and access all records or other papers where there is no compelling reason for secrecy or where secrecy is not enjoined by statute or rule * * * Openness to public scrutiny is one of the means by which public officials on boards can be held accountable for their official conduct of public business. The privilege of secrecy and confidentiality must have a compelling and justifiable basis * * *

"These cases establish that the public examination of public records is a fundamental right of citizens and taxpayers, and whatever motive or purpose may be involved in examining the said records is immaterial." (To the same effect see *Matter of C. Van Deusen, Inc. v New York State Liq. Auth.,* 47 Misc 2d 1094.)

The Legislature has determined and mandated that it is in the public interest that there be untrammelled and unfettered access to records such as that sought in the instant proceeding. If the Legislature had intended that records, before being made available to the public, be filtered through the eyes and perspective of a Judge, or otherwise censored, it would have so provided. It did not do so. To the contrary, and to emphasize its intent, the Legislature specifically denominated article 6 of the Public Officers Law (§§ 85-89) as the Freedom of Information Law. I do not believe that this "Freedom" should be restricted or limited in any manner by judicial interpretation or otherwise, other than as specifically set forth in that law. The history of our nation has proven time and again, includ-

ing notably very recent experience, that a free and vigilant press, with access to public records, is one of the great guardians of liberty, freedom and honesty in government. Therefore, I vote to reverse the judgment at Special Term and to grant the petition.

MARTUSCELLO, J. P., and LATHAM, J., concur with COHALAN, J.; MOLLEN, J., concurs in the reversal of the judgment, but otherwise dissents and votes to grant the petition, with an opinion, in which RABIN, J., concurs.

Judgment of the Supreme Court, Westchester County, dated August 17, 1976, reversed, on the law, without costs or disbursements, and proceeding remanded to Special Term for further proceedings in accordance with opinion of COHALAN, J.