DONREY OF NEVADA, INC., AND RENO NEWSPA-PERS, APPELLANTS, v. ROBERT BRADSHAW, RENO POLICE DEPARTMENT, ROBERT L. VAN WAGONER AND THE CITY OF RENO, RESPONDENTS.

No. 20057

September 19, 1990                    798 P.2d 144

---

[5]The Honorable Jerry Carr Whitehead, Judge of the Second Judicial District, was designated by the Governor to sit in the place of THE HONORABLE JOHN MOWBRAY, Justice. Nev. Const., art. 6, § 4.

*Woodburn, Wedge & Jeppson,* and *James W. Hardesty,* Reno, for Appellants.

*Georgeson, McQuaid, Thompson & Angaran,* Reno; *Patricia Lynch,* Reno City Attorney, and *Stephen F. Volek,* Deputy City Attorney, Reno, for Respondents.

# OPINION

By the Court, YOUNG, C. J.:

In March 1986, pursuant to a plea bargain, the Reno City Attorney's office dismissed charges against Joe Conforte for contributing to the delinquency of a minor. Because the Reno Police Department opposed the dismissal, it undertook an investigation of the circumstances of the dismissal and prepared a written report. The report, which concluded that there was no evidence of criminal wrongdoing (*e.g.* no bribery of a public official), was sent to the City Attorney's office, the District Attorney, and a municipal judge. Thereafter, both the City Attorney's office and the Police Department refused to release a copy of the report to petitioners Donrey of Nevada, dba KOLO-TV (Donrey), and Reno Newspapers, Inc., dba Reno Gazette-Journal (Reno Newspapers).

In April 1986, Donrey and Reno Newspapers filed a petition for a writ of mandamus based on NRS 239.010 which provides for disclosure of public records. In March 1989, the district court denied the petition, concluding that the report was a police investigative report intended by the legislature to be confidential under NRS Chapter 179A. The court further concluded that Chapter 179A did not involve a balancing test to determine whether such reports could be released if public policy considerations outweighed privacy and/or security interests. The court also found, following an in camera review, that the report was approximately 85 percent criminal investigation and 15 percent recommendations on future administrative procedures.

Appellants contend that the district court erred in concluding that the entire report was a police investigative report and in failing to release at least the 15 percent of the report that the court found administrative. As discussed below, because we conclude that the entire report was subject to disclosure based on a balancing of the interests involved, we need not address this argument.

Appellants principally contend that the investigative report prepared by the Reno Police Department is a public record subject to disclosure under NRS 239.010 because no statutory provision declares the contents of this type of report confidential. Pursuant to NRS 239.010, "all public books and public records of . . . government[] . . . officers and offices . . . *the contents of which are not otherwise declared by law to be confidential,* shall be open at all times during office hours to inspection by any person . . . ." (Emphasis added.) Specifically, appellants maintain that the district court erred in concluding that NRS Chapter 179A declares investigative and intelligence information confidential and not subject to disclosure.

NRS Chapter 179A was enacted in 1979 in response to the federal government's requirement that states "provide an acceptable plan concerning the dissemination of criminal history records, or be subject to certain budgetary sanctions." *See* 83 Op. Att'y Gen. No. 3 (May 2, 1983). NRS 179A.100(5) provides that

> [r]ecords of criminal history must be disseminated by an agency of criminal justice upon request, to the following persons or governmental entities:
>
> . . .
>
> (i) Any reporter for the electronic or printed media in his professional capacity for communication to the public.
>
> . . .

A "record of criminal history" is defined at NRS 179A.070 and

specifically excludes investigative or intelligence information.[1] Although this court has never interpreted the criminal history records statute, in 1983 the Attorney General rendered an opinion that criminal investigative reports were confidential and were not public records subject to NRS 239.010. *See* 83 Op. Att'y Gen. No. 3, *supra.*

Appellants maintain that the exclusion of the records listed in NRS 179A.070(2) from the definition of "record of criminal history" does not constitute a declaration of their confidentiality. Accurately observing that other excluded records are clearly not considered confidential, (*e.g.,* posters of wanted persons, court records of public judicial proceedings), appellants assert that the

---

[1]NRS 179A.070 provides:

"Record of criminal history" defined.

1. "Record of criminal history" means information contained in records collected and maintained by agencies of criminal justice, the subject of which is a natural person, consisting of descriptions which identify the subject and notations of arrests, detention, and indictments, informations or other formal criminal charges and dispositions of charges, including dismissals, acquittals, convictions, sentences, correctional supervision and release, occurring in Nevada. The term includes only information contained in memoranda of formal transactions between a person and an agency of criminal justice in this state. The term is intended to be equivalent to the phrase "criminal history record information" as used in federal regulations.

2. *"Record of criminal history" does not include:*

(a) *Investigative or intelligence information,* reports of crime or other information concerning specific persons collected in the course of the enforcement of criminal laws.

(b) Information concerning juveniles.

(c) Posters, announcements or lists intended to identify fugitives or wanted persons and aid in their apprehension.

(d) Original records of entry maintained by agencies of criminal justice if the records are chronological and not cross-indexed in any other way.

(e) Records of application for and issuance, suspension, revocation or renewal of occupational licenses, including permits to work in the gaming industry.

(f) Court indices and records of public judicial proceedings, court decisions and opinions, and information disclosed during public judicial proceedings.

(g) Records of traffic violations constituting misdemeanors.

(h) Records of traffic offenses maintained by the department to regulate the issuance, suspension, revocation or renewal of drivers' or other operators' licenses.

(i) Announcements of actions by the state board of pardons commissioners and the state board of parole commissioners.

(j) Records which originated in an agency other than an agency of criminal justice in this state.

(Emphasis added.)

Attorney General's opinion that investigative reports are confidential is inconsistent with the public status of the other records listed in NRS 179A.070(2).

Furthermore, appellants note that while Chapter 179A was patterned after the federal regulations concerning criminal history records, the Nevada legislature specifically deviated from the federal regulations when it excluded, along with other records, investigative and intelligence information from the definition of "criminal history records." *See* NRS 179A.070(2). Under the federal regulations, while the definition of "criminal history record information" is qualified not to extend to investigative information, a separate subpart specifically excludes various other records from the regulations governing disclosure of criminal history records. *See* 28 C.F.R. §§ 20.3(b), 20.20(b) and (c), and Appendix—Commentary on § 20.3(b) (1989). Unlike the federal regulations, the Nevada statute lists investigative and intelligence information together with other excluded records in the same subsection, NRS 179A.070(2), as not included in the definition of "record of criminal history" contained in NRS 179A.070(1). Appellants assert that the inescapable conclusion is that the Nevada legislature intended investigative reports to be subject to disclosure as are the other records.

Respondents maintain that this "overlap" does not appear to be intentional and they note that NRS 179A.070(1) states that "[t]he term [record of criminal history] is intended to be equivalent to the phrase 'criminal history record information' as used in the federal regulations." However, we reject respondents' argument that the legislature mistakenly lumped investigative reports together with other exclusions which are public records disclosable under NRS 239.010. Rather, we hold that the legislature deviated from the federal regulations with an intent to clarify that investigative reports are subject to disclosure if policy considerations so warrant.

Because NRS 179A.070 does not expressly declare criminal investigative reports to be confidential, we must determine to what extent they are disclosable under NRS 239.010. While NRS 239.010 mandates unlimited disclosure of all public records, other courts considering this question have recognized the common law limitations on disclosure of such records. *See, e.g.,* Carlson v. Pima County, 687 P.2d 1242, 1245 (Ariz. 1984); *see also* Records and Recording Laws, 66 Am.Jur.2d § 12 (1973).[2]

---

[2]The dissent argues that if the reports are non-confidential and subject to disclosure under NRS 239.010, then "the reports are to be made available to any person, at all times during office hours, for any advantage and for copying in full." Stating that this is an untenable conclusion, the dissent

Appellants argue that, under common law, criminal investigative reports were not confidential unless confidentiality was made necessary by considerations of public policy and on a case-by-case basis. Appellants note that the Attorney General's 1983 opinion lists a number of public policy considerations in support of the conclusion that criminal investigative reports are confidential.[3] In the present case, appellants argue that those same policy considerations favor disclosure of the report in question. Thus, appellants contend that the court erred in refusing to apply a balancing test to determine whether the investigative report should have been released.

Respondents assert that in enacting Chapter 179A, the legislature performed the necessary balancing between the public's right to know and individuals' rights to privacy and that consequently no additional judicial balancing is required. However, while the legislature may have balanced interests in deciding to require the release of criminal history records to the media, this is not dispositive of whether a court must balance public policy considerations when release of records other than those specifically defined as criminal history records is sought.

In support of their contention that the court should have used a balancing test to determine disclosure, appellants rely on a number of cases from other jurisdictions. *See, e.g., Carlson,* 687 P.2d at 1245; Irvin v. Macon Telegraph Publishing Co., 316 S.E.2d 449, 452 (Ga. 1984). Although respondents contend that these cases are inapposite, we hold that a balancing of the interests involved is necessary regardless of the case law from other jurisdictions.[4] Moreover, in applying a balancing test to this

---

asserts that we have rewritten NRS 239.010 with a balancing limitation regarding investigative and intelligence files. Rather than rewriting the Public Records Act, however, we simply recognize a common law limitation on the otherwise unlimited provisions of NRS 239.010.

[3]The opinion states:

The legitimate public policy interests in maintaining confidentiality of criminal investigation records and crime reports include the protection of the elements of an investigation of a crime from premature disclosures, the avoidance of prejudice to the later trial of the defendant from harmful pretrial publicity, the protection of the privacy of persons who are not arrested from the stigma of being singled out as a criminal suspect, and the protection of the identity of informants.

83 Op. Att'y Gen. No. 3 (May 2, 1983).

[4]The dissent suggests that we should adopt a "categorical" balancing test similar to that involved in the federal Freedom of Information Act. 5 U.S.C. § 552(b)(7) (1988). Contrary to the dissent's characterization of our balancing test as "ad hoc," however, we do not believe that there is a meaningful

case, none of the public policy considerations identified in the case law and the Attorney General's opinion as justifying the withholding of investigative information is present. There is no pending or anticipated criminal proceeding; there are no confidential sources or investigative techniques to protect; there is no possibility of denying someone a fair trial; and there is no potential jeopardy to law enforcement personnel. Even the district court acknowledged in its order that "if a [balancing] test were applied under the circumstances of this case, petitioners would undoubtedly prevail."

Accordingly, weighing the absence of any privacy or law enforcement policy justifications for nondisclosure against the general policy in favor of open government, we reverse the district court's denial of appellants' petition and remand with instructions to issue a writ of mandamus ordering respondents to release to appellants the entire police investigative report.

Springer, Mowbray and Rose, JJ., concur.

Steffen, J., dissenting:

Respectfully, I dissent.

Police investigative and intelligence reports are not subject to disclosure under NRS Chapter 179A, Nevada's Records Of Criminal History Act (the Act). They are specifically exempted from disclosure under the terms of the Act. Appellants contend that because other records are also specifically exempted that are not confidential, the Act intended to treat criminal investigative and intelligence reports as public records subject to disclosure to the media. The most that can be said for appellants' position is that the Act does not classify such reports as confidential or nonconfidential. Appellants' contention that the Attorney General's opinion declaring investigative reports confidential is inconsistent with the public status of other records listed in NRS 179A.070(2) appears to me to be unsound. All the referenced exemptive provision does is exclude various items from the mandatory disclosure requirements of the Act.

Appellants also contend that police investigative and intelligence reports are "public records" subject to disclosure under NRS 239.010 because they have not been accorded a confidential

difference between the two tests, especially where a number of the considerations listed in federal Exemption 7 are virtually identical to policy considerations mentioned here. Furthermore, we do not perceive that it would be any less burdensome to judicially screen these records under the dissent's proposed categorical test, if indeed judicial screening is unduly burdensome at all.

status by statute. By so contending, appellants are seeking the realignment of two strongly favored and juxtaposed public policies involving open government and effective law enforcement. Heretofore, law enforcement agencies have released to the media selective information on criminal investigations and procedures consistent with the ongoing interests of effective and efficient police operations and the right of the public to be reasonably informed. Obviously, if appellants had succeeded in achieving their optimum position, serious problems would have resulted in the law enforcement community. Considerations of safety for officers and informants, investigative methodology and efficacy, and cooperative efforts between agencies, to name but a few, would be seriously impacted.

The majority appears to have assumed a position of "neither fish nor fowl" concerning the status of criminal investigative and intelligence reports. As a result of the majority's rule of equivocation, law enforcement agencies will be unable to predict with assurance the status of their investigative and intelligence reports in any given case until they have been subjected to the uncertainties of a judicial balancing test. I expect that the end result of such a rule will be an altered method of maintaining or memorializing ongoing police investigations. In any event, I suggest that the majority rule is unnecessarily vexatious and disruptive to law enforcement. There is, I submit, a preferable alternative that I will address in due course.

As noted previously, appellants maintain that because some of the records excluded from the definition of criminal history records are not confidential in nature, all excluded records are public records and subject to dissemination under NRS 239.010. Aside from the fact that the premise is a non sequitur, it would be highly unlikely that the Legislature would exclude investigative and intelligence records from mandatory dissemination in one statute and require their disclosure in another. Appellants also assert, and the majority agrees, that because the Act deviated from the parent federal regulations by excluding investigative and intelligence records along with other records, the "inescapable conclusion" is that the Nevada Legislature intended such records to be subject to disclosure. I have reached a contrary conclusion.

The fact that certain records are excluded from the definition of "criminal history records" does not make them public records. For example, 28 C.F.R. § 20.20(b) of the parent federal regulations (hereinafter, in general, Federal Regulations) does not exclude information concerning juveniles. However, that category of records is among the records excluded from NRS 179A.070. NRS Chapter 62 prescribes a procedure for handling

juvenile records, including the sealing thereof. Although juvenile records are not explicitly declared confidential by statute, their general inaccessibility to the public and the procedures provided for their sealing compel the inference that they are confidential.

Similarly, criminal investigative and intelligence records are not among the enumerated documents excluded from the definition of "criminal history records" in the Federal Regulations. For this reason, the majority concludes that the Nevada Legislature deviated from the Federal Regulations with the intention that such records be subject to disclosure. It is clear, however, that NRS 179A.070(2) is not a "deviation" from the Federal Regulations. Subsection 20.21(g)(6) of the Code of Federal Regulations provides that:

> The individual's right to access and review of criminal history record information *shall not* extend to data contained in intelligence, investigatory, or other related files and shall not be construed to include any other information than that defined by § 20.3(b).

(Emphasis added.)

The quoted section limits an individual's right of access to his criminal history records. An individual who is the subject of a criminal history record is among those who *must* be given access to such records under NRS 179A.100(5). It is unreasonable to assume that the Federal Regulations, after which Chapter 179A was patterned, would preclude an individual from obtaining investigatory information on himself while mandating the release of the same information to the media. It is equally incredible that the Nevada Legislature, also precluding an individual from accessing investigative data concerning himself (NRS 179A.150(1)), would mandate the disclosure of such information to the media. I suggest, therefore, that Nevada's Act does not constitute a deviation from its federal counterpart and that the majority improperly concludes that the non-existent deviation was purposefully enacted in order to "clarify that investigative reports are subject to disclosure if policy considerations so warrant."

In Branzburg v. Hayes, 408 U.S. 665 (1972), the Supreme Court noted that "[i]t has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." *Id.* at 684. The court also observed that the press is regularly excluded from grand jury proceedings and crime scenes to which the public has no access, despite the fact that news gathering may be impeded. *Id.* Grand jury proceedings and crime

scenes are generally loci of investigations and intelligence which law enforcement agencies seek to protect from public access. Thus, even the public's right to know must at times be subordinate to criminal detection and investigation.

As previously noted, NRS 179A.070(2) does not make a declaration of confidentiality, but rather of exemption. NRS 179.100(5) (Supp. 1989) mandates that records of criminal history *must* be disseminated to certain enumerated individuals and entities, including the media. By excluding investigative and intelligence information from criminal history records, the statute is exempting such information from mandatory access. This position is supported by the Opinion of the Attorney General 83-3 (5-2-1983) in regards to NRS 239.010 as follows:

> Criminal investigation and intelligence reports are confidential as internal intelligence and investigative records collected in the course of the enforcement of criminal laws and are not public records subject to inspection under this section.

Because appellants' contentions are founded on the Public Records Act (PRA) embodied in NRS 239.010, it is illuminating to review cases in other jurisdictions interpreting similar statutes and their federal counterpart, the Federal Freedom of Information Act (FOIA).[1]

Appellants cite the PRA in support of the proposition that "absent an express declaration that a record is confidential, its disclosure is mandatory." They contend that because investigative and intelligence records have not been expressly declared confidential, they are public records subject to mandatory disclosure under the PRA. Importantly, however, that statute provides that "[a]ll *public* books and *public* records . . . the contents of which are not otherwise declared by law to be confidential" shall be available to the public. (Emphasis added.) Equally important, before a document comes within the purview of the statute, it must be a "public record." And, if the public record is declared to be confidential, it is exempt from disclosure under the PRA. Unfortunately, "public record" is not defined in the statute.

I am convinced that an investigative report is not, and was never intended to be, a public record subject to the disclosure mandates of the PRA. It has been stated that:

> "A public record, strictly speaking, is one made by a public officer in pursuance of a duty, the immediate *purpose of which is to disseminate information to the public,* or to serve as a memorial of official transactions *for public reference.*"

---

[1] 5 U.S.C. § 552.

Also a record is a "public record" which is *required by law to be kept,* or necessary to be kept in the discharge of a duty imposed by law or directed by law to serve as a memorial and evidence of something written, said or done. . . . It has also been held that a written record of transactions of a public officer in his office, which is a convenient and appropriate method of discharging his duties, and is kept by him as such, whether required by express provisions of law or not, is admissible as a public record.

Matthews v. Pyle, 251 P.2d 893, 895 (Ariz. 1952) (emphasis supplied).

Moreover, the mere fact that a record is prepared by a public official or employee does not make it a public record. Cowles Pub. Co. v. Murphy, 637 P.2d 966, 968 (Wash. 1981) (en banc). Similarly, a document does not become a public record merely because public officials collectively act upon it. *Id.* Nor does the fact that a document is kept by a public officer make it a public record. Looby v. Lomenzo, 301 N.Y.S.2d 163 (1969). In *Looby,* the court ruled that a card index file was not a public record because it was created to promote office efficiency rather than to satisfy statutory mandate. *Id.* at 165.

In the case of In re Toth, 418 A.2d 272 (N.J.Super.A.D. 1980), the Right to Know Law defined a public record as one "required by law to be made, maintained or kept on file" by government officials. *Toth* was, in essence, an inverse disclosure action. An officer was appealing a disciplinary action for disclosing an investigatory report on the chairman of the Casino Control Board. His defense was that the record was public under the State's Right to Know Law. The court held that because the statute did not require a written record or report to be made, it was not a public record within the purview of the statute.

By its very nature, a criminal investigative report does not fit the category of a public record. It is not prepared for dissemination to the public or to memorialize official transactions for public reference. Neither is it required by Nevada law to be prepared, maintained, or filed, unlike the situation in Carlson v. Pima County, 687 P.2d 1242 (Ariz. 1984), relied on by appellants. In *Carlson,* the report at issue dealt with an altercation between inmates and was required by law to be made.

The court in Westchester Rockland Newspapers, Inc. v. Mosczydlowski, 396 N.Y.S.2d 857 (1977), noted that "records of law enforcement agencies have traditionally been held exempted from public disclosure." *Id.* at 860. That case involved an Internal Affairs Division investigation into the untimely death of an inmate. As here, the inquiry focused on whether any crimes had

been committed and the extent to which any police department personnel were guilty of breach of duty. The IAD prepared its report, and the district attorney concluded that no evidence of criminal wrongdoing existed. The press, dissatisfied with a summary of the report, unsuccessfully sought access to the original. One of the grounds for denial was that the report was outside the purview of the Freedom of Information Law because it was part of a police investigatory file. The lower court ordered disclosure under the rationale that because the investigation had been closed without determining a basis for any criminal action, the report was no longer protected by the statute.

In reversing, the appellate court recognized that the New York Public Officers Law (akin to the Nevada's Public Records Law) subjected some police records to disclosure (e.g., police blotter and booking entries). The court nevertheless stated that:

> The subject report is not such a record. . . . [I]t is akin to an intra- or inter-agency memorandum within the contemplation of the Federal Freedom of Information Act (U.S. Code, tit. 5, § 552[b][5]), upon which our law is patterned, or is, perhaps, a final agency opinion on the facts and circumstances surrounding the death of an individual while in police custody. . . . So viewed, the competing interests at bar are best satisfied by directing disclosure of only so much of the subject report as represents purely factual matter, with the names of police officers and jail personnel deleted.

*Id.* at 860. The competing interests in the instant case appear to have been satisfied by the City Attorney's disclosure of the facts surrounding the dismissal of charges against Joe Conforte, portions of the report, and corresponding data.

I suggest, therefore, that only if a record can be properly construed to be both "public" and non-confidential in nature is it subject to mandatory dissemination. Although the majority has rewritten the PRA with a balancing limitation regarding investigative and intelligence files, if, as appellants contend, such files are non-confidential and subject to the terms of the PRA, then, under its express terms, the reports are to be made available to any person, at all times during office hours, for any advantage and for copying in full. In my opinion, such a conclusion is untenable and inimical to society's interests.

Appellants also assert that publication of the investigation report is necessary so that the public is not "left in the dark" about the policies and procedures of the City Attorney's office. However, as emphasized by cases interpreting FOIA and its state counterparts, there are some documents to which the public should not be privy.

■

Appellants cited Houston Chronicle Pub. Co. v. City of Houston, 531 S.W.2d 177 (Tex. 1975), for the proposition that the press and the public have a constitutional right of access to information concerning crime in the community and activities of law enforcement agencies. However, as stated by that court:

> This constitutional right of access to information should not extend to such matters as a synopsis of a purported confession, officers' speculation of a suspect's guilt, officers' views as to the credibility of witnesses, statements by informants, ballistics reports, fingerprint comparisons, or blood and other laboratory tests.

*Id.* at 187.

Prior to 1976, FOIA's Exemption 7 pertained to "investigatory records compiled for law enforcement purposes except to the extent available by law to a private party." 5 U.S.C. § 552(b)(7). That phrase was broadly interpreted to include any records containing information garnered in the investigation of possible criminal activity. For example, in Koch v. Dept. of Justice, 376 F.Supp. 313 (D.C. 1974), three Congressmen sought disclosure of files pertaining to themselves. The files contained background information on the Congressmen, correspondence, internal memoranda, and citizen complaints and comments. The court ruled that files maintained by the FBI in aid of investigations into the possibility that a subject had engaged in criminal activity or other conduct that would disqualify the person from government service were "investigatory files" and thus exempt under Exemption 7. The *Koch* court reasoned that "[i]n order to insure such confidentiality, F.B.I. files may be withheld if law enforcement was a significant aspect of the investigation for which they were compiled. . . ." *Id.* at 315. Because all documents (investigatory and non-investigatory) had been mingled together, the court ordered an in camera inspection. It stated that the inspection "could have been avoided had the Bureau clearly segregated investigatory material from other documents. . . ." *Id.*

Because Exemption 7 was subject to broad interpretation, it was amended by Congress in 1986 to narrow its scope. As amended, records and information compiled for law enforcement purposes are exempt from disclosure. However, the exemption applies only where disclosure would result in one of six specified harms.[2]

---

[2]5 U.S.C. § 552(b)(7) (1988 ed.) provides:

> (b) This section does not apply to matters that are—
>
> . . . .
>
> (7) records or information compiled for law enforcement purposes,

In Abramson v. FBI, 456 U.S. 615 (1981), the Supreme Court interpreted the meaning and scope of the 1976 version of Exemption 7.[3] *Abramson* involved a professional journalist who invoked the FOIA in an attempt to obtain information compiled by the FBI regarding certain politicians. The desired reports had been incorporated into a document transmitted to the White House. The Bureau denied the request on grounds that the information was exempt from disclosure under Exemptions 6 and 7 of the FOIA. However, the Bureau did provide the journalist with 84 documents, some of which had been partially redacted. The issue was whether the FBI reports lost their exempt status when joined with records compiled for other than law enforcement purposes.

The *Abramson* court approached the issue with the following analysis:

> The language of the Exemption indicates that judicial review of an asserted Exemption 7 privilege requires a two-part inquiry. First, a requested document must be shown to have been an investigatory record "compiled for law enforcement purposes." If so, the agency must demonstrate that release of the material would have one of six results specified in the Act.

*Id.* at 622. The court of appeals had ordered disclosure on the basis that the record did not qualify for the exemption. It reasoned that the record transmitted to the White House had not been compiled for law enforcement purposes, even though it contained information that was. The Supreme Court reversed, holding that:

> but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence information, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual.

[3] The 1976 version of Exemption 7 is substantially the same as the current Exemption 7. The amendment substituted the words "records and information" for the words "investigatory records."

> If a requested document . . . contains or essentially repro-
> duces all or part of a record that was previously compiled for
> law enforcement reasons, it is reasonably arguable that the
> law enforcement record does not lose its exemption by its
> subsequent inclusion in a document created for a non-
> exempt purpose.
>
> . . . .
>
> [T]he statutory language is reasonably construable to pro-
> tect that part of an otherwise non-exempt compilation which
> essentially reproduces and is substantially the equivalent of
> all or part of an earlier record made for law enforcement
> uses.

*Id.* at 624-25.

In the instant matter, the subject report unquestionably satisfies
the threshold inquiry. The investigation commenced to determine
whether bribery or other misconduct was a factor in the dismissal
of charges against Conforte. Appellants contend, however, that
because the report did not result in a prosecution and was subse-
quently labeled "administrative" in nature, the report is subject
to disclosure. I do not agree.

Under the *Abramson* ruling, if a report is initially prepared for
law enforcement purposes, the threshold requirement is met, and
the subsequent use to which the report is committed or name it is
given is of no significance. As declared by the court in Arenberg
v. DEA, 849 F.2d 579 (11th Cir. 1988):

> The information gathered by the agency need not lead to a
> criminal prosecution in order to meet the threshold require-
> ment. Courts should be hesitant to reexamine a law enforce-
> ment agency's decision to investigate if there is a plausible
> basis for the agency's decision.

*Id.* at 581.

Under the foregoing federal authorities interpreting the FOIA,
it is apparent that the investigative report compiled by the Reno
Police Department would qualify as exempt under subsection 7.
However, the inquiry does not end there. Next, an agency claim-
ing the Exemption 7 privilege must demonstrate that one of six
"harms" within Exemption 7 would result.

Appellants contend that because the investigative report has
not been declared by law to be confidential, at the very least a
balancing test should be used to determine whether the report
should be disseminated to the public. According to the Supreme
Court, the FOIA does not require such a test. The *Abramson*
court interpreted the federal act to mean that "[c]ongress . . .
created a scheme of categorical exclusion; it did not invite a

judicial weighing of the benefits and evils of disclosure on a case-by-case basis. *Abramson,* 456 U.S. at 631.

In U.S. Dept. of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749 (1989), the court discussed the categorical balancing approach to the FOIA exemptions. Reporters there sought to obtain the "rap sheets" of individuals believed to have improper dealings with a corrupt Congressman. The FBI invoked Exemption 7(C) in refusing the request. The court rejected an ad hoc balancing approach in favor of categorical balancing. Under the latter test, once a report falls into an exempted category, it is exempt from disclosure without the need for case-by-case balancing. The court reasoned that:

> *establishing a discrete category of exempt information* implements the congressional intent to provide "workable" rules. . . . Only by construing the Exemption to provide a categorical rule can the Act's purpose of expediting disclosure by means of workable rules be furthered.

(Emphasis in original.) *Id.* 489 U.S. at 779 (quoting FTC v. Grolier Inc., 462 U.S. 19 at 27-28). The court declared that this approach may be undertaken for an "appropriate class of law-enforcement records or information." Reporters Comm., 489 U.S. at 777. Thus, the court held:

> as a categorical matter that a third party's request for law-enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and that when the request seeks no "official information" about a Government agency, but merely records that a Government happens to be storing, the invasion of privacy is "unwarranted."

*Id.* 489 U.S. at 780.

However, protection from disclosure is not limited to persons in their individual capacity. In Buhovecky v. Dept. of Justice, 700 F.Supp. 566 (D.C. 1988), an inmate convicted of bank robbery sought access to FBI records. The investigative file consisted of grand jury material, "rap sheets," information obtained through interviews with law enforcement officials and individuals, and other materials. The FBI released some of the requested material, but withheld information which included the names of individuals and FBI personnel and the rap sheets. After undergoing a two-part inquiry to determine whether Exemption 7 was applicable, the court ruled that:

> The type of information defendants seek to protect is information which would lead to discovery of the identity of

> participants in a criminal investigation. The interest in non-disclosure is obvious here; there is a need to protect from harassment those who participate, in either an official capacity or as investigative sources, in FBI investigations.

*Id.* at 570.

Here, among the reasons respondents refused disclosure is the invasion of privacy of those who were investigated and against whom no charges were brought. Appellants claim the invasion is "minimal" and thus the public's need to know should be balanced favorably against the minimal intrusion. Such reasoning is inconsistent with the Supreme Court's interpretation of Exemption 7.

Categorical balancing is consistent with the second prong of the *Abramson* court's two-part analysis of Exemption 7. That is, once *one* of the six "harms" is demonstrated, the exemption is applicable. Moreover, it would appear that a "categorical balancing" would be both administratively and judicially efficient. In handling a records request, a government agency should be able to rely on bright-line procedures for disseminating information rather than awaiting a case-by-case judicial determination.

I have belabored federal case law concerning the FOIA by way of analogy only. In those limited instances where "public records" are of an uncertain confidential status, I suggest that the categorical balancing approach would be preferable to the ad hoc balancing fashioned by the majority. Despite the absence of Exemption 7 in Nevada's PRA, it would appear that the categories contained therein could be accorded judicial deference by Nevada courts as guidelines for implementing a categorical balancing approach. In so doing, we would assume no greater liberties with the language of the PRA than the majority rule limiting access to investigative and intelligence reports under the PRA to material sifted by an ad hoc judicial balancing.

Unfortunately, my preoccupation with the categorical balancing test amounts to little more than vented frustration over the burdensome judicial screening imposed by the majority under circumstances that, I respectfully submit, justify no balancing requirements at all. To me, it is beyond cavil that the PRA operates only on "public records," and that criminal investigative and intelligence reports are not, and were never intended to be, classified as public records. NRS Chapter 179A mandates the dissemination of specific criminal history information, expressly excluding investigatory and intelligence reports. The PRA mandates a complete dissemination of "public records." It is illogical to assume that what the Legislature specifically excluded from dissemination under the former, it intended to mandatorily

release in full under the latter. Such contortive reasoning renders meaningless the exclusion under Chapter 179A.

For the reasons hereinbefore expressed, I am convinced that the district court judge was both perceptive and correct and should be affirmed. I therefore dissent.