S91A0488. DORTCH et al. v. ATLANTA JOURNAL & ATLANTA CONSTITUTION et al.
(405 SE2d 43)

FLETCHER, Justice.
Appellant Dortch is the Director of the Bureau of General Services for the City of Atlanta (the "city"). In May of 1990, pursuant to the Open Records Act, OCGA § 50-18-70 et seq. (the "act"), appellees, The Atlanta Journal and The Atlanta Constitution, requested that appellants provide them with all 1990 cellular telephone bills paid by the city.

Appellants provided the documents but deleted from them all telephone numbers called from city cellular telephones. Appellants also deleted the numbers assigned to city cellular telephones but did place the amount of the bill for each such telephone beside the name of the person who used it.

Appellees responded by filing suit under the act, seeking an injunction that would require appellants to provide unredacted documents. See OCGA § 50-18-73. Appellants offered no evidence at the

hearing on the application for injunction but did argue that deletion of all numbers called from city cellular telephones was necessary in order to protect the privacy interests of persons who *might* have unlisted numbers.[1] Appellants also maintained that numbers assigned to city cellular telephones were deleted because it would become prohibitively expensive if members of the public were permitted to call city officials on such telephones. The trial court concluded that the documents were not exempt from the act for any of the reasons asserted and ordered appellants to provide appellees with unredacted documents.

1. Appellants argue that, absent an order consolidating the issues for trial, the trial court lacks authority to provide permanent relief following an interlocutory injunction. OCGA § 9-11-65 (a) (2). However, where there is notice of an interlocutory hearing, a trial court may reach a final determination of the issues if the parties do not object or have acquiesced.

The record here demonstrates that appellants had notice of the hearing and that, during the hearing, the trial court indicated that it intended to rule in favor of appellees. At the conclusion of the hearing, appellants' attorney inquired whether the trial court was "making this a final decision." The court responded that it was and appellants made no objection. Under these circumstances, we hold that appellants acquiesced in the court's decision on the merits. Therefore the trial court did not err in granting permanent relief.

2. Appellants concede that the documents in question are subject to disclosure under the act. OCGA § 50-18-70 (a). However, appellants assert that the telephone numbers of persons called on city cellular telephones were properly expunged because some of the numbers *might* be unlisted and their disclosure would amount to an invasion of privacy.

Appellants argue that the documents in question fall within the exemption for records, "the disclosure of which would be an invasion of personal privacy." OCGA § 50-18-72 (a) (2). We have held that the invasion of personal privacy encompassed by such exception is to be determined by an examination of the tort of invasion of privacy. *Athens Observer v. Anderson*, 245 Ga. 63 (263 SE2d 128) (1980). However, the exemption is not meant to exclude "legitimate inquiry into the operation of a government institution and those employed by it." Id. at 66; *Harris v. Cox Enterprises*, 256 Ga. 299, 301-302 (348 SE2d 448) (1986).

---

[1] The city stated that it had attempted to determine which of the numbers called from city cellular telephones were unlisted. However, the city was informed by Southern Bell that it would not provide such information absent consent of the person to whom each unlisted number was assigned.

The tort of invasion of privacy protects, inter alia, the right to be free from unwarranted publicity as well as from the " ' "publicizing of one's private affairs with which the public has no legitimate concern." ' " *Napper v. Ga. Television Co.*, 257 Ga. 156, 160 (356 SE2d 640) (1987). There are at least three elements necessary to recovery for an invasion of one's right of privacy:

> (a) the disclosure of private facts must be a public disclosure; (b) the facts disclosed to the public must be private, secluded or secret facts and not public ones; (c) the matter made public must be offensive and objectionable to a reasonable man of ordinary sensibilities under the circumstances." *Cabaniss v. Hipsley*, 114 Ga. App. [367, 372 (151 SE2d 496) (1966)]; *Napper*, supra at 160-161.

Even if we were to hold that publication of unlisted telephone numbers[2] involved disclosure of secret or private facts, we cannot say, in the circumstances presented here, that such disclosure would be so offensive or objectionable to a reasonable man as to constitute the tort of invasion of privacy. Therefore, we affirm the trial court's holding that the records in question are not exempt from disclosure under OCGA § 50-18-72 (a) (2).

3. Appellants argue that they should not be required to make public the numbers assigned to city cellular telephones because "it would be impossible to control the magnitude of incoming calls," and this could result in increased telephone bills. While we understand the potential financial problems that disclosure of the cellular telephone numbers could create, there is presently no exemption for such records under the act. Any such remedy must come from the General Assembly.

4. In their appeal to this court, appellants argue for the first time that there is a likelihood that some of the numbers sought may be exempt from disclosure under OCGA § 50-18-72 (a) (3). Appellants maintain that they did not raise this issue at the hearing on the interlocutory injunction because they did not anticipate that the trial court would enter a final order following the hearing. However, issues not raised in the trial court will not be considered for the first time on appeal. *Vickers v. Coffee County*, 255 Ga. 659 (340 SE2d 585) (1986); *Cohran v. Carlin*, 254 Ga. 580 (1) (a) (331 SE2d 523) (1985).

*Judgment affirmed. All the Justices concur, except Smith, P. J., and Benham, J., who dissent.*

---

[2] We reiterate that there has been no showing that any of the deleted telephone numbers in this case are unlisted.

SMITH, Presiding Justice, dissenting.

The Georgia Constitution draws a balance between the state's duty to protect the safety and welfare of its citizens and the individual's right to be free from excessive state intrusion into his private affairs. See Preamble to the Georgia Constitution of 1983, and Art. I, Sec. I, Par. I. Although guaranteeing public accountability is an important state interest, that interest may not be used to overwhelm the individual. For example, combatting crime is fundamental to our concept of ordered society. Even so, our criminal law requires the state to act within certain guidelines before an individual's right to privacy may be infringed. We require the police to obtain a search warrant and to follow certain procedures before installing a pen register, a device which records the phone numbers of both incoming and outgoing calls. OCGA § 16-11-60; *Ellis v. State*, 256 Ga. 751 (353 SE2d 19) (1987). By its decision today, the majority allows a newspaper to obtain, without a warrant, the same information as is gathered by a pen register, and gives any member of the public, under the guise of the Open Records Act, OCGA § 50-18-72 et seq., the ability to conduct an otherwise illegal search.

The appellee seeks the city's cellular telephone records because it claims to represent the public and it asserts that there is a legitimate public interest in publicizing those records. Included in those claims is a host of problems. The telephone records contain the cellular telephone numbers of the appellants, *any* telephone numbers (publicized or unlisted) which may have been called from the cellular telephones, and potentially, the telephone numbers of confidential police informants.

The appellee seeks disclosure of the numbers dialed from cellular telephones, claiming that the public has a legitimate interest in knowing who city officials and others call. They cite *Athens Observer v. Anderson*, 245 Ga. 63, 65 (263 SE2d 128) (1980), for the idea that "[t]he right of privacy, protectable in tort . . . extends only to unnecessary public scrutiny." Assuming for the sake of argument that the appellee's stated interest is legitimate, the majority fails to protect the privacy interests of individuals as required by *Griffin-Spalding County Hosp. Auth. v. Radio Station WKEU*, 240 Ga. 444 (241 SE2d 196) (1978). In *Griffin-Spalding*, this Court recognized the public's right to see certain records but ruled that where public and private information are mixed, the statute requires a custodian to separate the two and to release only the public information. The Court interpreted Code Annotated § 40-2701, the former open records statute, as requiring a "custodian of public records to preserve the confidentiality of information that the public does not have a right to see." The appellants' actions are authorized by *Griffin-Spalding*, supra at 447, which held that "[t]he manner of separating this information is left to

the discretion of the public agency." The deletion is not optional; it is mandated by *Griffin-Spalding*, which also holds that revealing personal information[3] can lead to liability in tort for invasion of privacy.

An unpublished telephone number is private and personal information. Under the majority opinion, *any* holder of an unpublished number who is called from a city-subscribed cellular telephone is automatically robbed of the confidentiality of his number. There is no notice. This is particularly objectionable in the case of a police officer, who is on call 24 hours a day and may well have been required to give his phone number to his supervising officer for contact in the line of duty. If an official using a cellular telephone calls him at home, his personal telephone number becomes publicly available without his consent or knowledge.

This Court has a constitutional duty to protect the privacy of the citizens of the State of Georgia. "The right of privacy within certain limits is a right . . . guaranteed to persons in this State by the constitutions of the United States and of the State of Georgia. . . ." *Pavesich v. New England Life Ins. Co.*, 122 Ga. 197 (50 SE 68) (1905). The real result of today's opinion is that any member of the general public, including convicted felons, may access the personal unlisted telephone numbers of our citizens, including police officers and their families. All that is required is that a person's home receive a call from a city-subscribed cellular phone. This is especially troubling in light of the fact that many police officers order and pay for unpublished telephone numbers in order to protect their families from harassment. Today's opinion effectively denies these officers, and others, their right to privacy and frustrates their attempts to shield their families and homes from intrusion.

Additionally, giving the public, through the release of the city's cellular telephone numbers, the means to call city officials at will and at the city's expense serves no conceivable purpose. The city has already complied with the Open Records Act by releasing the names of the official users of each cellular telephone and an accounting of the telephone expenses of each of those individuals. This adequately provides the public with the means to "evaluate the expenditure of public funds." *Athens Observer*, supra at 66.

Revealing the city's cellular telephone numbers will do nothing to improve the public's ability to communicate with the government or

---

[3] The General Assembly saw no need to specifically exempt "personal information" from OCGA § 50-18-72 as the previous statute had been construed to eliminate such information by *Griffin-Spalding* and subsequent amendments did not change the judicial construction. "It is a well settled canon of statutory construction that statutes are presumed to be enacted by the legislature with knowledge of the existing law." *Hart v. Owens-Illinois*, 250 Ga. 397, 400 (297 SE2d 462) (1982).

to monitor government expenses but will leave city officials open to harassment and the city treasury open to unchecked costs.[4] If the question is one of public access to elected and appointed officials, the officials are easily accessible through their published office numbers, and most of the officials have listed residential telephone numbers as well.

The police have even more pressing reasons to keep their cellular telephone numbers confidential. The drug suppression squad, special agents, and other branches of the Georgia Bureau of Investigation use city-subscribed cellular telephones in their official duties. Among those duties are contact with confidential informants, coordination of activities and maintenance of contact among team members. Allowing the general public, including pranksters, to clog these confidential lines may seriously impair the police's ability to communicate, respond to calls, and insure the public's safety.

Finally, today's decision fails to protect, as required by law, the lives and safety of informants, undercover agents, and others who may be endangered by a blanket disclosure of telephone records. OCGA § 50-18-72 (a) (3) explicitly states that such information is exempt from disclosure, yet the Court refuses to review this issue. This is a Court to correct error, not to promote it. *Miller v. State*, 260 Ga. 191, 197 (391 SE2d 642) (1990) (Smith, P. J., dissenting). At the very least, given the jeopardy in which disclosure places undercover agents and informants, and the unambiguous legislative intent to shield such persons, this Court should protect them by enforcing OCGA § 50-18-72 (a) (3).

BENHAM, Justice, dissenting.

Because I take issue with Division 4 of the majority opinion, I must dissent.

While it is true that appellants did not raise in the trial court[5] the concern that some of the telephone numbers sought by appellee may be exempt from disclosure under OCGA § 50-18-72 (a) (3),[6] I

---

[4] It is interesting to note that the General Assembly has exempted itself from compliance with certain provisions of the Open Records Act. OCGA § 50-18-72 (a) (7). While Georgia has no official legislative history to show why the legislative exemption was given, a reasonable reading would be that crucial and confidential on-going discussions need to be protected so as not to jeopardize sensitive business transactions and negotiating positions undertaken for the public benefit. This rationale could apply equally to city officials.

[5] Appellants maintain the issue was not raised in the trial court because they did not anticipate, at the hearing on the equitable injunction, that the trial court would enter a final order following the hearing. The transcript of the hearing reflects that after the trial court made oral findings of fact and conclusions of law and thanked the participants for their attendance, she affirmed the query of the city's attorney that she was making a final decision in the case.

[6] OCGA § 50-18-72 (a) (3) exempts from public disclosure. . . records compiled for law

believe that the interests of justice require us to expand traditional standard appellate procedure rules and remand this case to the trial court for a hearing to determine whether specific telephone numbers are exempt from disclosure under OCGA § 50-18-72 (a) (3).

The General Assembly enacted the subsection to protect law enforcement officers' confidential sources, whose lives or physical safety might be endangered if their identities were disclosed by release of law enforcement records to the public. Due to the potential gravity of this issue and in order to afford protection to those whom the Act was intended to protect, I would remand the case to the trial court to allow appellants to demonstrate which subject numbers are statutorily exempt under subsection (a) (3) from public disclosure.

DECIDED JUNE 21, 1991.

*Joe M. Harris, Alford J. Dempsey, Jr., Monica E. Ewing, Mitchell V. Coleman*, for appellants.

*Dow, Lohnes & Albertson, Carolyn Y. Forrest, Terrence B. Adamson, Peter C. Canfield*, for appellees.

---

enforcement . . . purposes to the extent that production of such records would disclose the identity of a confidential source . . . which would endanger the life or physical safety of any person or persons. . . .