OPINION
 

 By the Court,
 

 Maupin, J.:
 

 The appellant, DR Partners, a Nevada General Partnership, dba Las Vegas Review Journal (the “Newspaper”), operates a newspaper of general circulation in Clark County, Nevada. The respondents are the Clark County Board of Commissioners, individual members of that board, and two managerial employees of county government (the “County”).
 

 The district court denied the Newspaper’s petition for writ of mandamus seeking disclosure of unredacted records documenting use of publicly owned cellular telephones. It did so under the County’s claim of confidentiality based upon a “deliberative process” privilege. The Newspaper seeks reversal of this ruling.
 

 STATEMENT OF FACTS AND PROCEDURAL HISTORY
 

 On February 9, 1998, the Newspaper requested that the county manager of Clark County produce copies of records documenting the use, over a two-year period, of publicly owned cellular telephones issued to the individual respondents. This request was made in connection with the Newspaper’s investigation into possible government waste, and the extent of influence over public officials by private lobbying interests. The County partially complied with the request by providing billing statements for the time period in question in edited form, i.e., with the last four digits of the listed incoming and outgoing telephone numbers redacted. The documents produced reflected all calls made on a monthly basis, whether the calls were local or long distance, the length of each call, whether the calls were incoming or outgoing, whether the calls were made to or from government land lines, the charges for each call and the total monthly expenses. The redactions prevented any person reviewing the documents from determining the identity of the individuals with whom cellular telephone conversations occurred, or whether numbers with non-government prefixes reflected personal or government business use.
 

 The County claimed that the redacted information was subject
 
 *620
 
 to claims of confidentiality on three grounds: first, the records were subject to a “deliberative process” privilege; second the disclosures were protected under an “official information” privilege,
 
 see
 
 NRS 49.285; and third, the disclosures sought would violate individual privacy rights of persons whose telephone numbers were listed on the billing statements.
 

 On February 17, 1998, the Newspaper filed a petition in the district court for issuance of a writ of mandamus compelling the County to produce unedited records.
 
 See
 
 NRS 239.011. The district court denied the petition, and the Newspaper timely appealed. For the reasons stated below, we reverse the district court’s order and direct that the district court compel the disclosure of complete unredacted records documenting use of publicly owned cellular telephones.
 

 DISCUSSION
 

 The County argues that the ruling below should be affirmed based upon statutory and common-law claims of confidentiality. In substance, the only issue determined by the district court was whether a deliberative process privilege protects the County from disclosing the redacted portions of the cellular telephone records. In its written decision, the district court impliedly rejected the official information privilege asserted under NRS 49.285, and did not reach the issue of whether individual privacy rights were violated. Because the district court refused to find the presence of a statutory privilege, the primary issue to be determined in this matter is whether a deliberative process privilege applies as found by the district court.
 
 [1]
 
 Because we conclude that such a privilege is not implicated in this instance, we will also discuss the related issue of whether privacy considerations protect the County from disclosure of the unredacted records.
 

 A writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust or station,
 
 see
 
 NRS 34.160, or to control an arbitrary or capricious exercise of discretion.
 
 See
 
 Round Hill Gen. Imp. Dist.
 
 *621
 
 v. Newman, 97 Nev. 601, 637 P.2d 534 (1981). A district court’s decision to grant or deny a writ petition is reviewed by this court under an abuse of discretion standard.
 
 See
 
 County of Clark v. Doumani, 114 Nev. 46, 53, 952 P.2d 13, 17 (1998). Mandamus is the appropriate procedural remedy to compel production of the public records sought in this case.
 
 See, e.g.,
 
 Donrey of Nevada v. Bradshaw, 106 Nev. 630, 798 P.2d 144 (1990).
 

 The Nevada Public Records Act provides that “[a]ll public books and public records of a governmental entity, the contents of which are not otherwise declared by law to be confidential, must be open at all times during office hours to inspection by any person.” NRS 239.010. The purpose of the Act is to ensure the accountability of the government to the public by facilitating public access to vital information about governmental activities. Neither party to this appeal disputes that the records at issue are public records under the Act. This view is consistent with the prevailing weight of legal authority.
 
 See, e.g.,
 
 City of Elkhart v. Agenda: Open Government, Inc., 683 N.E.2d 622 (Ind. Ct. App. 1997); PG Publishing Company v. County of Washington, 638 A.2d 422 (Pa. Commw. 1994); Dortch v. Atlanta Journal, 405 S.E.2d 43 (Ga. 1991).
 

 The public official or agency bears the burden of establishing the existence of privilege based upon confidentiality It is well settled that privileges, whether creatures of statute or the common law, should be interpreted and applied narrowly.
 
 See
 
 Ashokan v. State, Dept, of Ins., 109 Nev. 662, 668, 856 P.2d 244, 247 (1993) (citing United States v. Nixon, 418 U.S. 683, 710 (1974)). Unless a statute provides an absolute privilege against disclosure, the burden of establishing the application of a privilege based upon confidentiality can only be satisfied pursuant to a balancing of interests:
 

 In balancing the interests ... , the scales must reflect the fundamental right of a citizen to have access to the public records as contrasted with the incidental right of the agency to be free from unreasonable interference. . . . The citizen’s predominant interest may be expressed in terms of the burden of proof which is applicable in this class of cases; the burden is cast upon the agency to explain why the records should not be furnished.
 

 MacEwan v. Holm, 359 P.2d 413, 421-22 (Or. 1961);
 
 see Bradshaw,
 
 106 Nev. at 635-36, 798 P.2d at 147-48.
 

 
 *622
 
 In
 
 Bradshaw,
 
 this court, at least by implication, recognized that any limitation on the general disclosure requirements of NRS 239.010 must be based upon a balancing or “weighing” of the interests of non-disclosure against the general policy in favor of open government.
 
 Bradshaw
 
 specifically held that, in the absence of an express statutory privilege against non-disclosure, certain criminal investigative reports prepared by a public law enforcement agency were subject to disclosure pursuant to the balancing test. The
 
 Bradshaw
 
 court did not elaborate on the existence or scope of common-law privileges protecting disclosure of public records.
 

 The claim, of deliberative process privilege
 

 As noted, the district court concluded that the records at issue were subject to partial non-disclosure under a common-law “deliberative process privilege.” It then applied the
 
 Bradshaw
 
 balancing test and ruled that the production of redacted documents did not violate the Public Records Act. The County did not, in aid of the balancing process, provide the district court with particularized evidence showing" that any interest in non-disclosure outweighed the general presumption in favor of public access. Noting apparent inconsistencies in the case law from around the country, and faced with a case of first impression in this state, the district court applied decisional law from California.
 
 See
 
 Times Mirror Co. v. Superior Ct., 813 P.2d 240, 242 (Cal. 1991) (discussing the rationale behind the deliberative process privilege); Rogers v. Superior Court, 23 Cal. Rptr. 2d 412 (Ct. App. 1993) (holding that cellular telephone bills of the Burbank City Council and other City employees were subject to the deliberative process privilege). Having considered the various approaches taken by other courts, and having weighed the public policy considerations inherent in our Public Records Act, we respectfully disagree with the district court and conclude that these records are not protected under a deliberative process privilege.
 

 The deliberative process or “executive” privilege is one of the traditional mechanisms that provide protection to the deliberative and decision-making processes of the executive branch of government and is preserved in “Exemption 5” of the Freedom of Information Act, 5 U.S.C. § 552 (1994). This privilege “shields from mandatory disclosure ‘inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]’ ” Paisley v. C.I.A., 712 F.2d 686, 697 (D.C. Cir. 1983) (quoting 5 U.S.C. §
 
 *623
 
 552(b)(5)). It also permits “agency decision-makers to engage in that frank exchange of opinions and recommendations necessary to the formulation of policy without being inhibited by fear of later public disclosure,”
 
 id.
 
 at 698, and, thus, protects materials or records that reflect a government official’s deliberative or decision-making process.
 
 See
 
 EPA v. Mink, 410 U.S. 73, 89 (1973). The privilege is not, at least in general, designed to protect purely factual matters.
 
 Id.
 
 More particularly, purely factual matters are not protected unless “inextricably intertwined” with the policy-making process.
 
 See
 
 Soucie v. David, 448 F.2d 1067, 1077-78 (D.C. Cir. 1971).
 
 But see
 
 National Wildlife Federation v. U.S. Forest Service, 861 F.2d 1114, 1118-19 (9th Cir. 1988); Wolfe v. Department of Health and Human Services, 839 F.2d 768, 774 (D.C. Cir. 1988); Dudman Communications v. Dept, of the Air Force, 815 F.2d 1565, 1568 (D.C. Cir. 1987); Russell v. Department of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982); Ryan v. Department of Justice, 617 F.2d 781, 790 (D.C. Cir. 1980); Lead Industries Ass’n v. OSHA, 610 F.2d 70, 85-86 (2d Cir. 1979); Montrose Chemical Corporation of California v. Train, 491 F.2d 63, 67-71 (D.C. Cir. 1974).
 
 [2]
 

 To qualify for non-disclosure under this privilege, the requested documents must be both predecisional and deliberative.
 
 See
 
 NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151-54 (1975); Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (9th Cir. 1975). To establish that the phone records in this case are “predecisional,” the County must identify an agency decision or policy to which the documents contributed.
 
 See
 
 Senate of Puerto Rico v. U.S. Dept, of Justice, 823 F.2d 574, 585 (D.C. Cir. 1987). To qualify as part of “deliberative” process, the materials requested must consist of opinions, recommendations, or advice about agency policies. In Paisley v. C.I.A., 712 F.2d 686, 698 (D.C. Cir. 1983),
 
 vacated in part on other grounds,
 
 724 F.2d 201 (D.C. Cir. 1984), the United States Court of Appeals for the District of Columbia explained the analysis as follows:
 

 To ascertain whether the documents at issue are predecisional, the court must first be able to pinpoint an agency decision or policy to which these documents contributed. The agency bears the burden of establishing the character of the decision, the deliberative process involved, and the role played by the documents in the course of that process.
 

 
 *624
 
 If, on remand, the District Court finds that the documents did play a role in some agency decision making process, the documents must yet be shown to be “deliberative” to be protected under Exemption 5. It is well established that purely factual material which is severable from the opinion or policy advice in a document is generally not protected and must be disclosed in a FOIA suit.
 

 Id.
 
 at 698-99;
 
 see also Senate of Puerto Rico,
 
 823 F.2d at 585.
 

 The County asserts that the factual nature of the documents requested should not be the primary focus of inquiry under the Public Records Act. Rather, the County contends that this court must center any analysis on “ ‘whether the disclosure of materials would expose an agency’s decisionmaking process in such a way as . to discourage candid discussion within the agency and thereby undermine the agency’s ability to perform its functions.’ ”
 
 Times Mirror,
 
 813 P.2d at 250 (quoting
 
 Dudman Communications,
 
 815 F.2d at 1568). The court in
 
 Times Mirror
 
 observed that “[disclosing the identity of persons with whom the Governor has met and consulted . . . would indicate which interests or individuals he deemed to be of significance with respect to critical issues of the moment. The intrusion into the deliberative process is patent.”
 
 Id.
 
 at 251. Thus, the County argues under
 
 Times Mirror
 
 and
 
 Rogers
 
 (applying
 
 Times Mirror
 
 to public cellular telephone records) that a particularized evidentiary showing was unnecessary to establish application of the deliberative process privilege.
 
 Id.
 
 We disagree with the premise of the California decisions and conclude that the names of persons with whom government officials have consulted are not protected from disclosure under a deliberative process privilege.
 
 See
 
 Van Bourg, Allen, Weinberg & Roger v. N.L.R.B., 751 F.2d 982, 985 (9th Cir. 1985) (inferentially stating that Exemption 5 to the Freedom of Information Act does not protect documents prepared for the government by outside consultants who do not have a formal relationship with the government); County of Madison, N.Y. v. U.S. Dept, of Justice, 641 F.2d 1036 (1st Cir. 1981) (approving principle that interested outside parties are not covered by Exemption 5 to FOIA). We agree with the proposition that identification of persons, retained or otherwise, who participate in policy formation and are somehow identified in the public written record, does not implicate the disclosure of factual information inextricably intertwined with the decision or policy-making processes of government. We also agree that “[f]ew outside consultants would be discouraged from providing recommendations by the mere prospect that their names
 
 *625
 
 would be disclosed, without the content of their advice” and that “there is ... a public interest in knowing who is being consulted by the Government and contributing to its decisions.” Note,
 
 The Freedom of Information Act and the Exemption for Intra-Agency Memoranda,
 
 86 Harv. L. Rev. 1047, 1065-66 (1973).
 

 Records kept with regard to use of cellular telephones issued to county officials, telephones that are issued as a matter of convenience, reveal nothing that would interfere with any deliberative process of government. The public officials in this case were not compelled to conduct business over a phone system where the billings, as a matter of course, include the local and long distance numbers of the parties to the telephonic conversations.
 

 We also conclude that
 
 Times Mirror
 
 and
 
 Rogers
 
 are distinguishable from the present matter.
 
 Times Mirror
 
 enforced executive privilege in the context of a request for copies of Governor George Deukmejian’s appointment calendars and schedules for the preceding five-year period. We agree that such materials are protected under notions of executive privilege and note that, within the special facts of that case, the California Supreme Court performed a balancing test and concluded that the public interest in non-disclosure outweighed the public interest in disclosure under the California public records law. In
 
 Rogers,
 
 the California Court of Appeals simply extended the holding in
 
 Times Mirror
 
 to the public records kept in connection with public cellular telephone use. Further,
 
 Rogers
 
 did not reach the issue of whether disclosure of cellular telephone records could be justified in connection with an investigation of possible government waste. Finally, neither
 
 Rogers
 
 nor
 
 Times Mirror
 
 hold that disclosure of records of this nature is subject to blanket protection.
 

 Other courts have held publicly owned cellular telephone records subject to disclosure.
 
 See
 
 City of Elkhart v. Agenda: Open Government, Inc., 683 N.E.2d 622 (Ind. Ct. App. 1997); PG Publishing Company v. County of Washington, 638 A.2d 422 (Pa. Commw. 1994); Dortch v. Atlanta Journal, 405 S.E.2d 43 (Ga. 1991). While
 
 Elkhart, PG Publishing
 
 and
 
 Dortch
 
 do not resolve public disclosure of these records under a deliberative process privilege, they acknowledge the public nature of these records and the general presumption in favor of public disclosure, subject only to a particularized showing of risks compelling non-disclosure. Further, as is true with regard to the materials sought in this case, the records in
 
 Elkhart, PG Publishing
 
 and
 
 Dortch
 
 fell within no statutory protection against disclosure.
 

 In the proceedings below, the County never identified the particular policies or decisions that could result from any of the cellular telephone calls documented in the redacted records. The
 
 *626
 
 County also failed to demonstrate that the records revealed any opinion, recommendation, or advice held by or given to any of the individual respondents. Thus, the information requested is purely factual in nature and does not reveal the content of any deliberative processes of the County. Further, as noted, no showing was made that the factual material is “inextricably intertwined” with any policy-making process.
 

 We also conclude that any weighing process on this record would compel disclosure of the unredacted documents. In the proceedings below, payment for private use of governmental cellular phone service by government officials was not properly accounted for in the records produced by the County. This lack of accounting prevented the Newspaper from determining the extent to which any governmental waste may have occurred. The County also failed to demonstrate that the records, as they were disclosed, provided an exact accounting of government expenditures for what may have been personal calls. Rather, the County concedes that “ball park figures” were utilized to determine the proper amounts for which the individual respondents reimbursed the County for personal calls. Further, the records as released failed to establish which conversations were entitled to confidentiality.
 

 We therefore hold that the County did not make a showing that the requested records implicate a deliberative process privilege. These records contain only numbers and billing information. They contain no information as to topics discussed or advice or opinions exchanged between the parties to the telephone calls.
 

 We also note that a deliberative process privilege, even when applicable, is conditional:
 

 Once the court determines that a document is privileged, it must still determine whether the document should be withheld. Unlike some other branches of the executive privilege, the deliberative process privilege is a qualified privilege. Once the agency demonstrates that documents fit within it, the burden shifts to the party seeking disclosure. It must demonstrate that its need for the information outweighs the regulatory interest in preventing disclosure.
 

 Capital Info. Group v. Office of the Governor, 923 P.2d 29, 36 (Alaska 1996) (quoting Weaver & Jones,
 
 The Deliberative Process Privilege,
 
 54 Mo. L. Rev. 279, 315 (1989)). Here, because the County never demonstrated by evidentiary proofs that a deliberative process privilege was implicated by the disclosure of the unredacted records, the burden never shifted to the Newspaper.
 
 *627
 
 Further, the absence of such proof prevented the district court from engaging in the weighing process mandated by
 
 Bradshaw.
 

 Privacy considerations
 

 In a related argument, not based on privilege, the County contends that disclosure of unredacted records would violate the privacy of persons with unlisted telephone numbers reflected on the billing statements. We conclude that, in general, there is no expectation of privacy in these billings. First, public officials who make calls to unlisted numbers or who provide their cellular numbers to members of the public know that the billings are a public record. Thus, the act of placing a cellular call to a private citizen places the number called within the public domain. Second, members of the public who knowingly place calls to government-issued cellular phones know that the public billings will reflect their unlisted telephone numbers. Third, to the extent that exigent circumstances are shown to justify non-disclosure, a district court reviewing such a claim is required to apply the
 
 Bradshaw
 
 balancing test. This issue is addressed immediately below.
 

 The County registers its public policy concern that private numbers of public officials, police and other persons whose privacy, and possibly safety, might be compromised will be forced into the public record. The County asks us to consider the reasoning of the dissent in
 
 Dortch:
 

 The real result of today’s opinion is that any member of the general public, including convicted felons, may access the personal unlisted telephone numbers of our citizens, including police officers and their families. All that is required is that a person’s home receive a call from a city-subscribed cellular phone. This is especially troubling in light of the fact that many police officers order and pay for unpublished telephone numbers in order to protect their families from harassment. Today’s opinion effectively denies these officers, and others, their right to privacy and frustrates their attempts to shield their families and homes from intrusion.
 

 Additionally, giving the public, through the release of the city’s cellular telephone numbers, the means to call city officials at will and at the city’s expense serves no conceivable purpose. The city has already complied with the Open Records Act by releasing the names of the official users of each cellular telephone and an accounting of the telephone expenses of each of those individuals. This adequately provides the public with the means to “evaluate the expenditure of public funds.”
 

 Revealing the city’s cellular telephone numbers will do
 
 *628
 
 nothing to improve the public’s ability to communicate with the government or to monitor government expenses but will leave city officials open to harassment and the city treasury open to unchecked costs. . . . The police have even more pressing reasons to keep their cellular telephone numbers confidential. . . . Allowing the general public, including pranksters, to clog these confidential lines may seriously impair [police] ability to communicate, respond to calls, and insure the public’s safety.
 

 Dortch,
 
 405 S.E.2d at 46-47 (citation omitted).
 

 Expanding on the concerns expressed in the dissent in
 
 Dortch,
 
 the County raises the point that “inside” or “back lines” of government offices, the cellular telephone numbers themselves, and the unlisted home telephone numbers of county employees who are contacted after hours will be subject to disclosure if the Newspaper prevails on this appeal. We conclude that the County has not laid an adequate predicate on this record for non-disclosure on this basis. First, these concerns are easily addressed by the balancing test adopted by this court in
 
 Bradshaw.
 
 Second, as noted, no offer of proof of any kind was submitted to the district court for the purpose of balancing important or critical privacy interests against the presumption in favor of public disclosure of these redacted records.
 
 [3]
 
 Rather, the County seeks to meet its burden by voicing non-particularized hypothetical concerns.
 
 See
 
 Star Pub. Co. v. Parks, 875 P.2d 837, 838 (Ariz. Ct. App. 1993) (observing that “it is insufficient [for the public entity] to hypothesize cases where secrecy might prevail and then contend that the hypothetical controls all cases”).
 

 CONCLUSION
 

 We conclude that the district court erred in its denial of the Newspaper’s petition for mandamus relief. While a deliberative process or “executive” privilege against certain disclosures exists in certain contexts, such a privilege is not implicated here. Thus, we defer any discussion of the scope of the deliberative process for an appropriate case. Further, even if a deliberative process privilege were found to apply, we conclude that public policy justifications for non-disclosure urged by the County below do not outweigh the presumption in favor of full disclosure in this instance.
 

 We therefore reverse the district court’s order denying the
 
 *629
 
 Newspaper’s writ petition and remand this matter to the district court for issuance of a writ of mandamus compelling the County to provide the Newspaper with unredacted copies of the requested records and for an award to the Newspaper of attorney’s fees and costs pursuant to NRS 239.Oil.
 
 [4]
 

 Rose, C. J., Young, Shearing, Agosti, Leavitt and Becker, JJ., concur.
 

 [1]
 

 We note in the margin our agreement with the district court that the claim of “official information” privilege under NRS 49.285 was “tortured” and conclude that the claim was completely without merit. NRS 49.285 provides that “[a] public officer shall not be examined as a witness as to communications made to him in official confidence, when the public interests would suffer by disclosure.” First, no testimony was sought. Second, no showing was made by the County below that any particular public interest would suffer as a result of full compliance with the public records request in this case.
 

 [2]
 

 National Wildlife, Wolfe, Dudman, Russell, Ryan, Lead Industries
 
 and
 
 Montrose Chemical
 
 all found inextricable interconnection between documents sought and the deliberative process, i.e., none of the materials sought in those cases would have been discoverable in the context of ordinary litigation discovery.
 

 [3]
 

 To the extent that disclosure of an unlisted number might raise serious privacy concerns, the district court, applying the balancing test, could require the County to divulge the identity of die caller but not his or her unlisted telephone number.
 

 [4]
 

 NRS 239.011 provides, as follows:
 

 If a request for inspection or copying of a public book or record open to inspection and copying is denied, the requester may apply to the district court in the county in which the book or record is located for an order permitting him to inspect or copy it. The court shall give this matter priority over other civil matters to which priority is not given by other statutes. If the requester prevails, he is entitled to recover his costs and reasonable attorney’s fees in the proceeding from the governmental entity whose officer has custody of the book or record.