A11A0600. EASON et al. v. MARINE TERMINALS
CORPORATION et al.
(710 SE2d 867)

MCFADDEN, Judge.
Robert Eason, Reginald Brown, Dahral Green and Arthur Sheffield appeal the dismissal of their lawsuit against Marine Terminals Corporation ("MTC"), Concentra Medical International, Ceres Marine Terminals, Inc., Georgia Stevedore Association and H. Curtis Jenkins III. The plaintiffs' claims are for invasion of privacy and defamation. The claims arise out of defendants' administration of drug and alcohol screening policies, which are set out in collective bargaining agreements. The trial court granted the defendants' motion to dismiss the complaint, finding that the plaintiffs had not exhausted the remedies in their collective bargaining agreements and that the complaint was deficient. Because some but not all of the plaintiffs' claims require the interpretation of collective bargaining agreements, and thus are preempted by Section 301 of the Labor Management Relations Act of 1947, 29 USC § 185 and because the complaint was sufficient under the notice pleading standard, we affirm in part and reverse in part.

A court may dismiss a complaint

> only where [the] complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proven in support of his claim. We review the dismissal de novo, construing the complaint's allegations and all possible inferences therefrom in favor of the plaintiff.

(Citations and punctuation omitted.) *Northeast Ga. Cancer Care v. Blue Cross &c. of Ga.*, 297 Ga. App. 28, 29 (676 SE2d 428) (2009). The plaintiffs allege that Eason and Sheffield are employees of MTC, and Brown and Green are employees of Ceres. The parties are governed by collective bargaining agreements entered between the

International Longshoreman's Association and the South Atlantic Employers' Negotiating Committee, of which MTC and Ceres are members. The union and the employers' negotiating committee negotiated a random drug and alcohol testing policy to include in the collective bargaining agreements. The random drug and alcohol testing policy provides that testing shall be in accordance with the procedures set forth in the "policy on drugs" provision of the collective bargaining agreements. It also provides that all rules, enforcement provisions and penalties governing the collective bargaining agreements' "policy on drugs" shall apply to personnel tested pursuant to the random drug and alcohol testing policy. MTC and Ceres hired Concentra to perform the random drug and alcohol tests.

The plaintiffs were tested under this policy in February and March 2005. Eason's, Brown's and Green's test results came back false positive. According to the plaintiffs' complaint, "Ceres and MTC posted the drug test results."

The plaintiffs contend that the defendants violated their rights to privacy by testing them in the open, in the presence of other employees, thereby subjecting their private medical information to public scrutiny. They contend that their rights to privacy were further violated when the defendants posted their drug test results in public.

In addition, Eason, Brown and Green contend that the posting of false positive test results amounted to defamation because it created the impression that they had engaged in criminal behavior. And Eason contends that defendant Jenkins slandered him by telling others about the drug test results.

The plaintiffs attached to their complaint a copy of the random drug and alcohol testing policy which provided that, "[d]isputes arising from the administration of this program shall be subject to the grievance procedure."

The defendants moved to dismiss the complaint on the ground that the plaintiffs were required to exhaust the remedies in the collective bargaining agreements before filing suit. The plaintiffs countered that their claims are based exclusively on state law, not the parties' collective bargaining agreements. The trial court determined that the plaintiffs' claims concern the application and interpretation of the random drug testing provision in the collective bargaining agreements. Concluding that the claims are "inextricably intertwined with interpretation of the drug testing policy," the court found them to be subject to the grievance procedures and mandatory arbitration provisions of the collective bargaining agreements. The trial court also found that the plaintiffs' complaint was "woefully deficient." The court therefore granted the motion to dismiss. The

plaintiffs then filed this appeal.

1. If the trial court correctly determined that the plaintiffs' claims are inextricably intertwined with the random drug testing policy of the collective bargaining agreements, thereby requiring interpretation of the agreements, it follows that the claims are preempted by federal labor law, and the trial court properly dismissed the complaint. "[A]n application of state law is preempted by § 301 of the Labor Management Relations Act of 1947 . . . if such application requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef*, 486 U. S. 399, 413 (108 SC 1877, 100 LE2d 410) (1988). See also *Dugger v. Miller Brewing Co.*, 199 Ga. App. 850, 852 (1) (406 SE2d 484) (1991) (physical precedent only) (The test for determining whether or not a state cause of action is preempted under § 301 is whether the plaintiff's claim "is sufficiently independent of the [c]ollective [b]argaining [a]greement.").

The issue, then, is whether the plaintiffs' complaint alleging torts based on Georgia law requires interpretation of the collective bargaining agreements. We note that the case upon which the plaintiffs primarily rely, *Wright v. Universal Maritime Svc. Corp.*, 525 U. S. 70 (119 SC 391, 142 LE2d 361) (1998), did not involve the issue of preemption of a state law claim but instead involved whether an arbitration provision in a collective bargaining agreement barred a longshoreman's suit under the Americans with Disabilities Act, a federal statutory law.

In determining whether the plaintiffs' state tort law claims require interpretation of the terms of the collective bargaining agreements, we first look to the elements of the state law claims. *Lightning v. Roadway Express*, 60 F3d 1551, 1557 (11th Cir. 1995).

(a) The plaintiffs first allege the tort of invasion of privacy. That tort protects

> the right to be free from unwarranted publicity as well as from the publicizing of one's private affairs with which the public has no legitimate concern. There are at least three elements necessary to recovery for an invasion of one's right of privacy: (a) the disclosure of private facts must be a public disclosure; (b) the facts disclosed to the public must be private, secluded or secret facts and not public ones; (c) the matter made public must be offensive and objectionable to a reasonable man of ordinary sensibilities under the circumstances.

(Citations and punctuation omitted.) *Dortch v. Atlanta Journal &c.*, 261 Ga. 350, 352 (2) (405 SE2d 43) (1991). Pertinent to determining

whether a plaintiff may recover for invasion of privacy is the consideration of whether the allegedly tortious behavior is reasonable under the circumstances. See *Anderson v. Mergenhagen*, 283 Ga. App. 546, 551 (2) (642 SE2d 105) (2007). In this regard, when the disclosure is intracorporate or between members of unincorporated groups or associations, and is heard by one who, because of his duty or authority has reason to receive the communication, there is no public disclosure and thus no invasion of privacy. *Wilson v. Home Depot USA*, 288 Ga. App. 582, 587 (2) (654 SE2d 408) (2007). See also *Galardi v. Steele-Inman*, 266 Ga. App. 515, 519 (2) (597 SE2d 571) (2004).

The plaintiffs contend that the defendants violated their rights to privacy by testing them in the open, in the presence of other employees, thereby subjecting their private medical information to public scrutiny and by posting their drug test results in public. Determining whether this conduct was reasonable under the circumstances — circumstances that include the existence of drug testing provisions in the collective bargaining agreements — requires interpretation of the collective bargaining agreements themselves. The parties' agreements as to the manner in which the defendants would administer the random drug testing policy are necessarily relevant to any allegation that the policy was administered in a tortious manner. See *Allis-Chalmers Corp. v. Lueck*, 471 U. S. 202, 218-219 (105 SC 1904, 85 LE2d 206) (1985). "[D]eciding whether a party acted reasonably and in good faith in carrying out a right or obligation under the collective bargaining agreement requires a reference to the contract and an interpretation of its provisions, thereby invoking § 301 preemption." *Clark v. Newport News Shipbuilding &c. Co.*, 937 F2d 934, 937 (4th Cir. 1991). See also *Jackson v. Liquid Carbonic Corp.*, 863 F2d 111, 121 (1st Cir. 1988) (employee's state law invasion of privacy claims were preempted by § 301 where "[t]he central thesis of his suit question[ed] whether [the employer]'s drug-testing protocol was reasonable" in light of the union's grant of authority to the employer to conduct medical examinations and to post reasonable rules), cert. denied, 490 U. S. 1107 (109 SC 3158, 104 LE2d 1021) (1989).

(b) The four elements of the tort of defamation are: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." (Punctuation omitted.) *Bollea v. World Championship Wrestling*, 271 Ga. App. 555, 557 (1) (610 SE2d 92) (2005). Communications made in good faith in the performance of a legal duty, however, are privileged. OCGA § 51-5-7 (2).

The plaintiffs contend that the defendants' posting of Eason's, Brown's and Green's false positive test results amounted to a defamation because it created the impression that they had engaged in criminal behavior and exposed them to public hatred, contempt and ridicule. When determining whether a state defamation claim is preempted under § 301, "courts look beyond the allegations of the complaint to determine whether the wrong complained of actually arises in some manner from the breach of the defendants' obligations under a collective bargaining agreement." (Punctuation omitted.) *Garley v. Sandia Corp.*, 236 F3d 1200, 1211 (10th Cir. 2001). "[I]t is difficult to understand how the plaintiff[s] could establish that the challenged publications were unprivileged . . . without interpreting the [collective bargaining agreement] provisions that identified the duties imposed on all defendants." *DeCoe v. Gen. Motors Corp.*, 32 F3d 212, 217 (6th Cir. 1994). Determining whether the plaintiffs were defamed by the defendants' actions requires the examination of the defendants' rights and obligations under the collective bargaining agreements to decide whether their actions were privileged or authorized. Id. "[Section] 301, however, preempts state causes of action from permitting this sort of inquiry." *Garley*, supra. The defamation claim is therefore preempted. Compare *Luecke v. Schnucks Markets*, 85 F3d 356, 361 (8th Cir. 1996) (state law defamation action based on publication of allegedly false statement that plaintiff had refused to take a drug test not preempted because, inter alia, collective bargaining agreement in effect at the time action arose "made no mention whatever of a drug testing policy or of procedures for enforcement, nor did it impose any requirement of confidentiality").

(c) Under OCGA § 51-5-4 (a), slander, or oral defamation, consists of

> (1) Imputing to another a crime punishable by law; (2) Charging a person with having some contagious disorder or with being guilty of some debasing act which may exclude him from society; (3) Making charges against another in reference to his trade, office, or profession, calculated to injure him therein; or (4) Uttering any disparaging words productive of special damage which flows naturally therefrom.

Eason contends that defendant Jenkins is liable individually and as a union business agent for slandering him by telling others about his false positive drug test result, causing others to speculate whether Eason was engaged in illegal drug use. To the extent Eason asserts claims against Jenkins in his capacity as a union business

agent, it is necessary to interpret the collective bargaining agreements to determine whether Jenkins's statements were privileged as the good faith performance of a legal duty. OCGA § 51-5-7 (2); see also *Lewis v. Meredith Corp.*, 293 Ga. App. 747, 749 (1) (667 SE2d 716) (2008) ("[S]tatements made during private, intra-corporate investigations conducted in good faith performance of a private duty are privileged and are not 'published' for purposes of a defamation claim.").

To the extent Eason contends that Jenkins made statements in his individual capacity to individuals outside the scope of the collective bargaining agreements, then those statements would have been made outside the scope of Jenkins's employment, and they would not be privileged as the good faith performance of a legal duty. Consequently, no interpretation of the collective bargaining agreements is required, and Eason may proceed on this claim. See *Meier v. Hamilton Standard Electronic Systems*, 748 FSupp. 296, 299 (E.D. Pa. 1990) (plaintiff's contentions that defamatory statements were made to individuals who were outside the scope of the employer's collective bargaining agreement and thus who would not have had a legitimate interest in them were not "inextricably intertwined" or "substantially dependent" on an interpretation of the collective bargaining agreement).

2. To the extent that the trial court dismissed Eason's slander claim against Jenkins individually on the ground that it was "woefully deficient," we reverse. The complaint included all that was required, namely "a short and plain statement of the claim that [gave] the defendant[s] fair notice of what the claim [was] and a general indication of the type of litigation involved; the discovery process bears the burden of filling in details." *Dillingham v. Doctors Clinic, P.A.*, 236 Ga. 302, 303 (223 SE2d 625) (1976).

For these reasons, we reverse the grant of the motion to dismiss Eason's slander claim against Jenkins individually. We affirm the grant of the motion to dismiss the remainder of the plaintiffs' claims.

*Judgment affirmed in part and reversed in part. Phipps, P. J., and Andrews, J., concur.*

DECIDED MAY 25, 2011.

*Buckley & Klein, Edward D. Buckley III*, for appellants.
*Ashman, Lasky & Cooper, Jeffrey W. Lasky, Ellis, Painter, Ratterree & Adams, Maury Bowen, Bouhan, Williams & Levy, Walter*

*C. Hartridge, Hall, Booth, Smith & Slover, James E. Looper, Jr., Steven P. Bristol*, for appellees.