139 Nev., Advance Opinion 12

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| CLARK COUNTY ASSOCIATION OF SCHOOL ADMINISTRATORS AND PROFESSIONAL-TECHNICAL EMPLOYEES, Appellant, vs. CLARK COUNTY SCHOOL DISTRICT; EDUCATION SUPPORT EMPLOYEES ASSOCIATION; AND CLARK COUNTY EDUCATION ASSOCIATION, Respondents. | No. 83481 <br><br> FILED <br><br> MAY 11 2023 <br><br> ELIZABETH A. BROWN <br> CLERK OF SUPREME COURT <br> BY_____ <br> CHIEF DEPUTY CLERK |

Appeal from a district court order denying a petition for a writ of prohibition or, in the alternative, a writ of mandamus. Eighth Judicial District Court, Clark County; Veronica Barisich, Judge.

*Affirmed.*

Brownstein Hyatt Farber Schreck, LLP, and Christopher M. Humes and Patrick John Reilly, Las Vegas,
for Appellant.

Dyer Lawrence, LLP, and Francis C. Flaherty and Sue S. Matuska, Carson City,
for Respondent Education Support Employees Association.

Law Office of Daniel Marks and Adam Levine and Daniel Marks, Las Vegas,
for Respondent Clark County Education Association.

Marquis Aurbach Chtd. and Jackie V. Nichols and Craig R. Anderson, Las Vegas,
for Respondent Clark County School District.

23-14843

BEFORE THE SUPREME COURT, EN BANC.[1]

*OPINION*

By the Court, STIGLICH, C.J.:

This is an appeal from a district court order denying appellant's writ petition and granting respondents' motions to dismiss. Below, appellant school administrators' union filed a petition for extraordinary writ relief, alleging that respondent school district had violated NRS 388G.610 by implementing a policy under which certain teachers were unilaterally assigned to local school precincts without each respective precinct's consent. The district court determined that appellant failed to show that writ relief was warranted because appellant did not demonstrate that any assignment was inconsistent with statutory requirements.

We affirm the district court's order denying writ relief. Under NRS 388G.610, a local school precinct's authority to select teachers for itself parallels that which the superintendent of a large school district previously enjoyed. Because the school district's authority was subject to collective bargaining, the local school precinct's authority is likewise limited, meaning its selection decisions, too, must comply with collectively bargained-for terms. As the complained-of policy was implemented to ensure compliance with collective bargaining agreements and allowed for as much selection authority as the school district held, it did not run afoul of NRS 388G.610. We therefore conclude that the district court did not err in interpreting NRS 388G.310 in this way and denying writ relief.

---

[1]The Honorable Patricia Lee, Justice, and the Honorable Linda Marie Bell, Justice, did not participate in the decision in this matter.



In 2015, the Legislature created an advisory committee tasked with developing a plan and providing recommendations to reorganize respondent Clark County School District (CCSD) into local school precincts. The advisory committee made recommendations, giving rise to Assembly Bill 469 during the 2017 legislative session. The Legislature passed the bill, which was codified as NRS 388G.500 to NRS 388G.810.

NRS 388G.500 sets forth the legislative findings and declaration with regard to the new statutes. Specifically, the Legislature found that "large school districts are prone to develop large, complex and potentially inefficient, cumbersome and unresponsive bureaucracies" that rely too heavily on a centralized decision-making model. NRS 388G.500(1)(a). It explained that a different approach—one that is site-based at the local school precinct, rather than centralized—encourages more innovative decision-making better tailored to the specific needs and concerns of local schools. *See* NRS 388G.500(1). To that end, NRS 388G.610(2) requires the superintendent of large school districts to transfer certain authority and responsibilities to local school precincts (individual schools), including the authority to select teachers, administrators other than the principal, and other staff. NRS 388G.610(2). Another statute, NRS 388G.700(2), provides that the local school precinct's principal "shall select staff for the local school precinct . . . from a list provided by the superintendent."

After issues arose in the statutes' implementation, appellant Clark County Association of School Administrators and Professional-Technical Employees (CCASAPE) petitioned the district court for a writ of prohibition or mandamus, alleging that CCSD had instituted a policy of assigning teachers to local school precincts without the consent—and often

 

over the objections—of local principals in violation of NRS 388G.610(2) and NRS 388G.700(2). CCSD allegedly instituted this so-called "teacher lottery" (whereby principals were required to fill vacancies with CCSD teachers who had not already been selected by a local precinct before hiring substitutes for those positions) because the local precincts refused to select available, but assertedly problematic, teachers for openings, leaving a number of CCSD teachers without positions. Apparently, when only one district teacher was qualified and available to fill a particular open position, the principal was required to accept that teacher for the position, ostensibly removing from the principal any choice in who was selected. CCASAPE asserted that one of the teachers so-assigned to a school had several unsatisfactory reviews, which included admonishments that he not degrade students, put his hands on students, or push or grab students. Another of the so-assigned teachers had allegedly hit a student with a stack of papers and demonstrated tendencies to slam her fists on her desk and scream at students.

In its petition, CCASAPE identified five examples of local school principals being forced to select CCSD teachers, or in one case a school counselor, over their preferred candidates, each of whom was listed in CCSD's online applicant pool. According to CCASAPE, this policy violated NRS Chapter 388G's provisions vesting in local administrators the power to make staffing decisions. CCASAPE requested that the district court (1) declare the teacher lottery an illegal practice; (2) order CCSD to undo each instance where it unilaterally assigned a teacher to a local school precinct; and (3) order CCSD to cease placing teachers, administrators, or staff without a local school precinct's consent. Shortly after the lawsuit was

filed, in December 2020, CCSD ceased the policy under which teachers were unilaterally assigned to local school precincts.

CCSD, along with respondents Education Support Employees Association and Clark County Education Association, both of which intervened below, each opposed CCASAPE's petition by way of motions to dismiss, arguing among other things that CCASAPE's claims were more appropriately asserted in a declaratory relief action, especially as they concern the integration of a number of interrelated statutes that give CCSD the right to hire teachers, the local precincts the right to select from those hires, and CCSD the mandate to collectively bargain for the hires' transfers and assignments, from which bargained-for agreements the teacher lottery had sprung.

The district court issued an order denying CCASAPE's writ petition and granting respondents' motions to dismiss. The court ruled that the writ petition was not moot even though CCSD has discarded the teacher lottery because maintaining the teachers placed by way of the teacher lottery was an asserted ongoing harm.[2] The court concluded that CCSD's policy did not violate NRS 388G.610(2)(a) because, under the policy, CCSD provided local principals with a list of available teachers, from which they were required to select teachers to staff their schools pursuant to NRS 388G.700(2). This appeal followed.

---

[2]On appeal, the parties do not argue that the district court erred in concluding that this matter was not moot.

## DISCUSSION

*Standard of review*

"A district court's decision to grant or deny a writ petition is reviewed by this court under an abuse of discretion standard." *DR Partners v. Bd. of Cty. Comm'rs of Clark Cty.*, 116 Nev. 616, 621, 6 P.3d 465, 468 (2000). We review statutory interpretation de novo. *N. Nev. Homes, LLC v. GL Constr., Inc.*, 134 Nev. 498, 500, 422 P.3d 1234, 1236 (2018).

*Although its petition failed on the merits, CCASAPE did not procedurally err by pursuing extraordinary writ relief*

Respondents argue, as a threshold matter, that the district court correctly dismissed CCASAPE's petition because CCASAPE sought the wrong remedy—a writ of mandamus or prohibition—when it should have sought declaratory and injunctive relief. A writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station, *see* NRS 34.160, or to control an arbitrary or capricious exercise of discretion. *DR Partners*, 116 Nev. at 620, 6 P.3d at 468. A writ of prohibition may be granted to curb the jurisdictional excesses of an entity or person exercising judicial functions. NRS 34.320. Either writ will issue only "where there is not a plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170; NRS 34.330.

CCASAPE's petition sought to compel the school board's compliance with NRS 388G.610 and therefore fell squarely within the purview of mandamus relief. CCASAPE filed its petition immediately after the teacher lottery was implemented and explained that the COVID-19 pandemic caused a drop in student enrollment, a situation that CCASAPE alleged would imminently cause more teachers to be unilaterally reassigned by CCSD. Respondents are correct that CCASAPE could have achieved part

Supreme Court
OF
Nevada

(O) 1947A

6

of the relief it sought by pursuing a declaratory judgment respecting the proper interpretation of NRS 388G.610. But a declaratory judgment would not have afforded CCASAPE the order compelling immediate compliance with the law that it sought. "Where a declaratory judgment . . . would not be a complete remedy unless coupled with a mandatory injunction, the availability of declaratory judgment is not an appropriate basis to deny an otherwise justifiable writ of mandamus." 55 C.J.S. *Mandamus* § 23, at 44 (2021) (footnote omitted); *see Falcke v. Douglas County,* 116 Nev. 583, 586, 3 P.3d 661, 662 (2000) (entertaining petition for writ relief over defense objection that a declaratory judgment action afforded the petitioner an adequate remedy "where circumstances reveal urgency or strong necessity" and/or "an important issue of law needs clarification"). CCASAPE adequately demonstrated the lack of "a plain, speedy and adequate remedy in the ordinary course of law" and, from a procedural perspective, qualified its petition for consideration of extraordinary writ relief.

*The district court did not err in interpreting NRS 388G.610*

CCASAPE argues that NRS 388G.610 does not permit CCSD to assign a teacher to a school. It argues that the statute's transfer of authority goes in only one direction—from the school board to the local school precinct—and that the authority to select teachers does not return to the school district, even if a local school precinct intends to use a short-term substitute when a district teacher is available. CCASAPE also points to language in A.B. 469 (the 2017 bill that gave rise to NRS 388G.610) stating that the statutes' provisions were to prevail over any other conflicting law. To the extent that NRS 388G.610 conflicts with NRS 288.150(2)(u)—which subjects policies related to the transfer and reassignment of teachers to collective bargaining—CCASAPE argues that NRS 388G.610's provisions must prevail.



CCSD counters that, under NRS 388G.610(3), it remains responsible for negotiating employment terms for its teachers, indicating that NRS 388G.610(2)'s transfer-of-authority language remains subject to collective bargaining. To that end, CCSD argues it lacks the ability to "transfer" to local school precincts more authority to select their teachers than CCSD itself enjoys (i.e., the selection of teachers is subject to existing collective bargaining agreements). CCSD further argues that NRS 388G.700(2) requires local school precincts to select teachers from a list provided by the school district. Therefore, CCSD concludes, the Legislature did not intend a local school precinct's authority to select its teachers to be unfettered.

"When a statute is clear and unambiguous, this court gives effect to the plain and ordinary meaning of the words and does not resort to the rules of construction." *Orion Portfolio Servs. 2, LLC v. County of Clark ex rel. Univ. Med. Ctr. of S. Nev.*, 126 Nev. 397, 402, 245 P.3d 527, 531 (2010). NRS 388G.610(2) provides that the superintendent "shall transfer to each local school precinct the authority to . . . [s]elect for the local school precinct the: (1) [t]eachers; (2) [a]dministrators other than the principal; and (3) [o]ther staff who work under the direct supervision of the principal." The local principal makes these staff selections from "a list provided by the [school district] superintendent." NRS 388G.700(2).

NRS 388G.610(3) provides that CCSD remains responsible for "paying for and carrying out all other responsibilities necessary for the operation of the local school precincts . . . which have not been transferred to the local school precincts." One of the responsibilities stated is negotiating, among other things, the "conditions of employment of administrators, teachers and other staff necessary for the operation of the

local school precinct." NRS 388G.610(3)(a). Elsewhere, NRS 288.150(2)(u) subjects "the policies for the transfer and reassignment of teachers" to mandatory collective bargaining.

Here, NRS 388G.610(2) is clear and unambiguous. It expressly states that a school's authority to select its teachers is "transfer[red]" from CCSD's superintendent. NRS 388G.610(2). As a verb, "transfer" means "to pass . . . from one to another, [especially] to change over the possession *or control* of." *Transfer, Black's Law Dictionary* (11th ed. 2019) (emphasis added). CCSD's own authority to select teachers for a local school is limited by the policies for the transfer and reassignment of teachers negotiated pursuant to NRS 288.150(2)(u). And the Legislature expressly left to CCSD the responsibility to negotiate employment terms. *See* NRS 388G.610(3)(a). Accordingly, the Legislature's use of "transfer" in NRS 388G.610(2) means that a school's authority to select teachers is likewise limited. In other words, CCSD cannot "pass control of" a greater authority to select teachers than it possesses, such that local schools' authority to select teachers cannot circumvent the terms of existing collective bargaining agreements.

To this end, it appears, NRS 388G.700(2) provides that the principal of a school "shall select staff for the local school precinct . . . from a list provided by the superintendent." And while CCASAPE avers that "a list" indicates that CCSD must provide a single list from which a school may select teachers, the plain language of the statute does not support this conclusion. Courts have long recognized that, as indefinite articles, "a" and "an" do not necessarily imply the singular. *See, e.g., Nat'l Union Bank of Bos. v. Copeland*, 4 N.E. 794, 795-96 (Mass. 1886) ("[T]he particle 'a' is not necessarily a singular term. It is often used in the sense of 'any,' and is then applied to more than one individual object."); *Deutsch v. Mortg. Sec. Co.*, 123

S.E. 793, 795 (W.V. 1924) ("The indefinite article 'a' may sometimes mean one, where only one is intended, or it may mean one of a number, depending upon context."). Indeed, many courts construe "a" or "an" to mean "any." *See, e.g.*, *Lindley v. Murphy*, 56 N.E.2d 832, 838 (Ill. 1944) ("The article 'a' is generally not used in a singular sense unless such an intention is clear from the language of the statute."); *BP Am. Prod. Co. v. Madsen*, 53 P.3d 1088, 1091-92 (Wyo. 2002) ("Other courts agree that, in construing statutes, the definite article 'the' is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'"). Here, there is no clear intention from the Legislature that its use of "a" meant a singular list.

In sum, the plain language of NRS 388G.610(2) provides for a local school precinct to enjoy only the authority to select teachers for itself that CCSD itself previously enjoyed. Because CCSD's authority is subject to its existing collective bargaining agreements, the authority transferred to local school precincts is likewise limited. The plain language of the relevant statutes does not indicate an intention by the Legislature for NRS 388G.610(2) to interfere with CCSD's collective bargaining responsibilities.[3]

---

[3]We note that NRS 288.150 provides only two carve outs whereby the transfer or reassignment of teachers is not subject to mandatory collective bargaining. NRS 288.150(9) provides that the board of trustees overseeing a school designated as a turnaround school, or the principal of such school, "may take any action authorized pursuant to NRS 388G.400, including . . . [r]eassigning any member of the staff." And NRS 288.150(11) allows for a school district's board of trustees to "use a substantiated report of the abuse or neglect of a child or a violation of" certain statutes to, among other things, act "concerning the assignment, discipline, or termination of an employee." But NRS 288.150 provides no corresponding carve out for NRS 388G.610. The lack of such a carve out indicates that the Legislature intended NRS 388G.610 to be subject to NRS 288.150.

Accordingly, the district court did not err in interpreting NRS 388G.610 as generally allowing for the policy challenged here.[4]

## CONCLUSION

In reorganizing large school districts into local school precincts, the Legislature required superintendents of large school districts to transfer the authority to select teachers and staff to local school precincts. This authority, however, remains subject to collective bargaining, a responsibility the Legislature expressly left to large school districts. The district court properly rejected CCASAPE's interpretation of NRS 388G.610. Accordingly, we affirm the district court's order denying and dismissing CCASAPE's writ petition.

_____, C.J.
Stiglich

We concur:

_____, J.
Cadish

_____, J.
Herndon

_____, J.
Pickering

_____, J.
Parraguirre

---

[4]CCASAPE argues reversal is warranted based on certain factual findings made by the district court that CCASAPE argues are unsupported by the record or by which the district court drew inferences in favor of the nonmoving parties. However, we conclude that the district court did not err in its interpretation of the relevant statutes. Accordingly, CCASAPE has not demonstrated that it was prejudiced by the district court's alleged errors. _See_ NRCP 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").